THE TOWN OF GOLCONDA *et al.*

*v.*

JOHN FIELD *et al.*

*Filed at Mt. Vernon January 22, 1884.*

1. FERRY—*rights and duties of holder of franchise.* A party, by accepting a ferry franchise, assumes an obligation to the public to provide necessary boats and machinery to transport persons and property, and is bound to provide safe and proper facilities for the prompt and speedy accommodation of the public, in consideration of which the law gives him the exclusive right to toll from all persons who may use his ferry.    The privilege of establishing and operating a ferry is a franchise, in which the public have an interest.

2. SAME—*remedy for infringing on right.* The creation of a rival ferry is an invasion of a grant of a prior franchise.    An invasion of such a right is a nuisance, and the party aggrieved will have a remedy at law in an action on the case for the disturbance, and in modern practice resort may be had to a court of equity to stay the injurious interference.

3. An exclusive ferry franchise was, in 1823, conferred on a party, who continued to use and enjoy the same until his death, in 1855, when the same descended to his heirs, who took possession of and continued to operate the ferry under such franchise.    In 1859 the General Assembly, by a special act, authorized one of the heirs to establish a ferry at the same place, and operate the same for the term of twenty years.    At the expiration of this term, in 1879, the county board issued a ferry license at the same place to a third person, who transferred the same to an incorporated town, to whom the tenant of the heirs attorned:  *Held,* that the right to the franchise which the heirs inherited was not lost or surrendered by accepting or acting under the grant in 1859, and that a court of equity would enjoin any interference with their rights by those claiming under the license of the county board.

4. ESTOPPEL—*from an admission—or accepting a title inferior to one already held.* The very nature of an estoppel is, where an admission is intended to lead, and does lead, a man with whom a person is dealing into a line of conduct which must be prejudicial to his interest unless the party be cut off from the power of retraction.

5. Parties already the owners in fee of a ferry franchise under a prior grant can not be held to lose any rights under the same by merely accepting a subsequent grant for a limited term. In such case they may claim and hold under both grants without prejudice to either one.

APPEAL from the Circuit Court of Pope county; the Hon. DANIEL M. BROWNING, Judge, presiding.

Messrs. MORRIS & BOYER, and Mr. JAMES A. ROSE, for the appellants:

The legislative grant of a ferry franchise for twenty years was a contract between the State and John Field. (Cooley on Const. Lim. secs. 277, 278, and note.) If it was a contract it extinguished the former rights of appellees under a prior grant, and they are estopped from now claiming that they operated the ferry under the grant to their ancestor. If Elizabeth and John Henshaw procured the act of the legislature in conjunction with John Field, whereby title was conferred on him alone, they are estopped from asserting title. The former grant, with the consent of the grantee or his assignee, may be changed by the sovereign power, and John Field, standing in the same relation as his ancestor, was competent to obtain a new contract changing the old one. He did obtain such new contract, and it must speak for itself, and he is estopped from asserting anything *dehors* the contract thus obtained. That is the measure of his rights, and it fixes the period at twenty years. Cooley on Const. Lim. 390, 394, 396; *Mills* v. *County of St. Clair*, 2 Gilm. 197.

The legislature must have intended that Field's right to the franchise should expire at the end of twenty years, and such intention would accord with sound public policy. *Carroll* v. *City of East St. Louis*, 67 Ill. 568.

If his right ceased at the end of the twenty years, the county board was under no obligation to grant him a license on the ground he was the owner of the soil composing the ferry landing, as a franchise is not an incident to the ownership of land.  *Trustees of Schools* v. *Tatman*, 13 Ill. 27.

Field was a party to the proceeding before the county board, and resisted the grant of a license to Jahn, and had his remedy at law by removing the proceedings to the circuit court by *certiorari*.  The same may be said as to the orders of the town.  *City of Ottawa* v. *Chicago and Rock Island R. R. Co.* 25 Ill. 535.

Mr. Wesley Sloan, for the appellees:

No person can be deprived of his life, liberty or property except by the judicial department, where he is entitled to the right of trial by jury, and the forms, pleadings and practice of the courts.  This ferry was established in 1823, and confirmed by the act of 1827, and has been continuously used ever since,—now more than fifty-six years.  The county board has no power to issue license to any one to keep a ferry within one mile of any established ferry.  (Rev. Stat. 1874, p. 530.) Hence the order granting such license to Jahn was void, as being in express violation of the law.  Complainant might, by bringing forcible entry and detainer, regain his former position, but the void order, license and deed would still be outstanding.  In chancery alone could he have a complete remedy.

Messrs. Green & Gilbert, also, for the appellees:

A ferry franchise is real estate.  *Dundy* v. *Chambers*, 23 Ill. 369; *Conway* v. *Taylor's Exr.* 2 Black, 632.

The grant of such franchise is a contract between the State and the grantee of the franchise.  *Mills et al.* v. *St. Clair County et al.* 2 Gilm. 197.

Whenever the public good requires, or the exigencies of the State demand it, all the rights and privileges conferred may be resumed, upon adequate compensation being made therefor. *Mills et al.* v. *St. Clair County et al.* 2 Gilm. 197; *Pipkin* v. *Wynus,* 2 Dev. (N. C.) 402; *Lippincott* v. *Alexander,* 27 Iowa, 460; *Bowman's Devisees* v. *Walker,* 2 McLean, 376.

Ferries being *publici juris,* the owner of the land adjoining the water course over which the ferry is proposed to be established is not thereby entitled to the ferry franchise, but the statute gives such owner the preference over others when a grant of the franchise is made, and a grant of a ferry franchise will be presumed after twenty years' possession and user of such franchise. *Mills et al.* v. *County Commissioners,* 2 Scam. 53.

The State alone could insist upon a waiver or forfeiture of the ferry franchise. *Trustees of Schools* v. *Tatman,* 13 Ill. 27.

The very nature of an estoppel is, when an admission is intended to lead, and does lead, a man with whom a party is dealing into a line of conduct which must be prejudicial to his interest unless the estopped party be cut off from the power of retraction. Hermann's Law of Estoppel, 8.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

It appears from the bill of appellee, and the allegations of the bill are admitted to be true by the demurrer, that in the year 1823 Daniel Field was the owner in fee of a certain strip of land containing thirty-eight acres, lying between the town of Golconda, in Pope county, and the Ohio river. The tract of land ran southwardly from the mouth of Lusk creek, which is the northern boundary of the town. It also appears that Daniel Field was operating a ferry from his land at the mouth of Lusk creek across the Ohio river. At the September term, 1823, of the county commissioners' court of Pope county,

Daniel Field presented a petition to the court praying the commissioners to establish and confirm in him a ferry franchise across the Ohio river in front of the town of Golconda, and the commissioners, after due consideration, established a ferry across the Ohio river at the mouth of Lusk creek, and licensed the said Daniel Field to charge and collect certain sums of money as ferry rates. It also appears from the bill that by the act of the legislature of the State of Illinois, entitled "An act supplemental to an act entitled 'an act to establish and regulate ferries, approved February 20, 1819,' approved and in force February 12, 1827," the said ferry, so established and confirmed to the said Daniel Field, was declared to be an established ferry, and gave to him, his heirs and assigns, full power and authority to demand and receive from passengers and other persons such rates of toll as should from time to time be established by the county commissioners' court of said county. It also appears from the bill that Daniel Field departed this life on the 5th day of August, A. D. 1855, and from the time said ferry was established until the day of his death, (more than thirty-one years,) he, by himself, his agents and tenants, was in full possession of said ferry, its privileges and appurtenances, and operated the said ferry continuously and exclusively during the said thirty-one years and more, without let or hindrance, and said ferry, from the time of its establishment until the death of Daniel Field, was recognized by the county commissioners' court as being the property of Daniel Field. It is also alleged that upon the death of Daniel Field the title to the ferry passed to his heirs, and that appellees, by proper conveyances, became the owners thereof; that since the death of Daniel Field the ferry franchise has been in the exclusive possession and enjoyment of his heirs, without let or hindrance, first by all the heirs, and next by complainants, until the commencement of the grievances hereafter mentioned,—a period of more than twenty-three years,—thus making a period of more than

fifty-five years since the establishment and confirmation of the ferry by the county commissioners' court at the September term, A. D. 1823, to the commencement of the grievances herein complained of, during all which time the ferry has been in the exclusive and continuous use, occupation and enjoyment, without let or hindrance, of Daniel Field, during his lifetime, and of his heirs since his death, as aforesaid. It is also alleged that complainant John Field, on the 1st day of January, 1859, without any intention whatever to release or waive complainants' already vested right and title in and to said ferry franchise, obtained, at the general session of the legislature of 1859, the passage of a special law authorizing John Field, his heirs and assigns, to establish and keep a ferry across the Ohio river between Golconda and the opposite Kentucky shore, for the term of 20 years. During the continuance of the term of twenty years, which expired February 24, A. D. 1879, complainants kept and operated said ferry, under their fee simple title, vested in them by descent and purchase, as aforesaid, and also under said special act; but since the expiration of the twenty years therein mentioned, complainants kept and operated said ferry under their fee simple title acquired by descent and purchase, as aforesaid. It also appears from the bill that in 1879, after the expiration of the twenty years named in the charter, the county board of Pope county issued a license to Frank Jahn, mayor of the town of Golconda, to operate a ferry across the Ohio river, between the town of Golconda and the opposite shore in the State of Kentucky; that after obtaining said license, Frank Jahn, by deed of conveyance, sold and conveyed to the town of Golconda the said ferry right so granted to him, as aforesaid. It also appears from the bill that when Jahn obtained a license, and conveyed the same to the town, complainants were in the possession of the ferry, and operating the same by and through a tenant, named Berry; that the town of Golconda fraudulently induced the said

Berry to attorn to the said town, and thus ousted the complainants from the possession and use of their property. The bill contains other allegations, but it will not be necessary to notice them here.

In order to ascertain the rights of the complainants in this case, it will be necessary to determine, first, the nature, character and extent of the privilege conferred upon Daniel Field by the order of the county commissioners' court entered at the September term, 1823, in connection with the acts of 1819 and 1827. Under the order and the statute it is clear that a ferry was established and a ferry franchise conferred upon Daniel Field, his heirs and assigns. He assumed an obligation to the public to provide necessary boats and machinery to transport persons and property over the river. He was bound to provide safe and proper facilities for the prompt and speedy accommodation of the public. On the other hand, in consideration of the duty imposed upon him, the law which imposed that duty conferred upon him the right of exclusive toll to be charged all persons who used his ferry. The right or privilege thus conferred may be regarded as a franchise. Kent, in vol. 3, page 458, in speaking of this right, says: "The privilege of making a road or establishing a ferry, and taking tolls for the use of the same, is a franchise, and the public have an interest in the same, and the owners of the franchise are liable to answer in damages if they should refuse to transport an individual, without any reasonable excuse, upon being paid or tendered the usual rate of fare." The same author also says: "An estate in such a franchise and an estate in land rest upon the same principle, being equally grants of a right or privilege for an adequate consideration." The author also lays down the doctrine that if the creation of the franchise is not declared to be exclusive, such is implied from the grant, and an interference by creating a rival franchise would be a violation of the grant; that an invasion of a right of this character would be a nuisance,

and the party aggrieved would have a remedy at law in an action on the case for the disturbance, and in modern practice resort might be had to a court of chancery to stay the injurious interference.

Here, under the allegations of the bill, if they are true, (and they are admitted to be true by the demurrer,) a ferry franchise was conferred upon Daniel Field in 1823; that he at once entered into the possession and enjoyment of the right, and so continued for a period of thirty-one years, until his death, in 1855, when the right or privilege possessed by him descended to his heirs, who continued in the possession and enjoyment of the rights of their ancestor until they were dispossessed by defendants, in 1879. Was this right one which could be taken and destroyed by the defendants, or was it a property right still owned by complainants, which is entitled to protection in the courts? The defendants, as we understand the argument, do not deny that complainants are entitled to relief if they are entitled to claim under Daniel Field, but they contend that all rights acquired by them from Daniel Field in and to the ferry have been surrendered or lost.

In 1859 (February 24) the General Assembly passed an act in which John Field, his heirs and assigns, are authorized to establish and keep a ferry for the term of twenty years, across the Ohio river, between the town of Golconda, in the county of Pope, in the State of Illinois, and the opposite shore, in the State of Kentucky. The argument is, that John Field having recognized the act of 1859, and acted under it, he and the other complainants are estopped from claiming any rights other than those granted by that act of the legislature. The doctrine of estoppel is not applicable to a question of this character. In Hermann's Law of Estoppel, page 8, the author says: "The very nature of an estoppel is, when an admission is intended to lead, and does lead, a man with whom a party is dealing into a line of conduct

which must be prejudicial to his interest unless the estopped party be cut off from the power of retraction." There was no admission or line of conduct by the complainants which would enable the defendants in this case to invoke the law of estoppel. The complainants owned a ferry franchise, which they had a right to enjoy and use until they should commit some act which might authorize the State to interfere and forfeit the franchise. While in the enjoyment of this right the act of 1859 was enacted by the legislature, which conferred a franchise for twenty years, but this act conferred no additional rights upon complainants. At the time the act was passed they had, under the law of the land, all that the act of 1859 professed to confer, and much more, and we are unable to perceive how it is that complainants lost all rights held by them under the grant to Daniel Field in 1823, and confirmed by the act of 1827, by merely accepting the provision of the act of 1859. Suppose a certain person is in the possession of a tract of land under a regular chain of title from the government. Another person holds a tax title on the land, which the owner in possession buys, and obtains a deed. Is the owner, when his title may be called in question, estopped from asserting title to the land from the government from the fact that he purchased an outstanding tax title, and after the purchase occupied under such title in connection with the original title? Surely not; and yet there is no substantial difference between the supposed case and the position of complainants. The complainants, when the act of 1859 was passed, were in the possession of the ferry franchise which had been conferred originally on Daniel Field, and descended to them. They had an undoubted right to hold and operate the ferry under the original grant. They did no act indicating an intention to abandon title to the ferry, but when the act of 1859 was passed they accepted its provisions, and held under it in connection with the original title. We do not think they waived any rights held under the

original grant by accepting the provisions of the act of 1859, nor were they estopped from claiming under the original grant. If they thought the act of 1859 might strengthen their title to the ferry, we perceive no reason which would preclude them from accepting its provisions and at the same time retain the original title held by them when the act of 1859 was passed. This was no doubt the view of the circuit court, which we believe to be correct.

The decree of the circuit court will be affirmed.

*Decree affirmed.*