STATE OF MAINE BY INFORMATION OF THE ATTORNEY GENERAL

vs.

TWIN VILLAGE WATER COMPANY.

Lincoln.   Opinion December 8, 1903.

*Quo Warranto,* Against Water Company. *Corporations,* Powers and Franchises. Non-user of same.   *Priv. and Spec. Laws, 1893, c. 607; 1895, c. 10.*

The Glidden Water Illuminating and Power Company, subsequently changed to the name of the Twin Village Water Company, was incorporated and authorized by c. 607, Special Laws of 1893, to furnish water to Nobleboro, Newcastle and Damariscotta and their inhabitants for domestic, sanitary and municipal uses, and the extinguishment of fires, and to furnish electric lights for lighting streets in those towns, and to dispose of electric light and power to individuals and corporations.

Besides the necessary power of eminent domain, it was also authorized to contract with the towns, or any village corporation and with other corporations and individuals to supply water or electric light or power.

The act provided that in case no portion of the works of the corporation should be put into operation within two years of the date of the approval of the act, March 28, 1893, "the rights and privileges" granted should be null and void.   By an additional act, c. 10, Special Laws, 1895, approved Feby. 1, 1895, the time within which some portion of the work should be put in operation was extended to four years from that date.

On or before Jany. 1, 1897, the company had put in operation its water plant, and has ever since so continued such operation and furnished water to the towns under the charter.   It has never furnished electric light or power as authorized by its charter.

Upon information filed by the Attorney General in the nature of quo warranto because of this omission, claiming in behalf of the State that the corporation should be ousted from that portion of its charter which relates to electric lights and power, *held;*

1.   As this branch of corporate rights is distinct and separate from the rights as to water, it is competent to render such a decree if the evidence warrants.

2.   It was a condition precedent that the corporation should have in operation some portion of its works within the limited time.   This it did.   It had its water plant in operation within that time.   It then became vested with the full chartered powers.

3. The act contemplated that other portions of the works, and of course the duty appertaining thereto, would be further delayed. No time was fixed by the act within which such remaining portion should be put in operation. The law then requires it to be done within a reasonable time.

4. The burden of proof rests upon the State to establish its allegations. There is no evidence of any usurpation by the corporation. Non-action in regard to electricity is all that is shown; nor is the allegation that the defendants prevent the use of streets by any other corporation of any weight. The charter authorizing the use of streets is not exclusive. It does not prevent the Legislature from granting like authority to another corporation.

5. The suspension of the exercise of the franchise for the time it has existed to furnish electric light and power, under the circumstances of the case as they appear in evidence, are not in the opinion of the court sufficient cause to require a decree of ouster.

6. The acts of the corporation, as well as the testimony of its officers, negative the intention to abandon this branch of the company's franchise and give reason for delay. The delay is not wilful in the sense of a disregard of public interests, but because the towns and their citizens did not want and would not take the electricity. The public has not suffered, because the public did not desire the accomodation.

7. Until the towns or their inhabitants, desire electric light and power, the defendant corporation may well be excused from the exercise of its chartered power in that regard.

See *Twin Village Water Co.* v. *Damariscotta Gaslight Co., post.*

On report. Information by Attorney General. Dismissed.

The proceeding by the Attorney General is as follows:—

STATE OF MAINE.

Lincoln, ss.        Supreme Judicial Court, April Term, A. D. 1903.

State of Maine.

By information of GEORGE M. SEIDERS, Attorney General,

*vs.*

TWIN VILLAGE WATER COMPANY.

Be it remembered that on the twenty-ninth day of October, in the year of our Lord one thousand nine hundred and two, George M. Seiders, Attorney General of the State of Maine, comes before the

court in his proper person and by virtue of his office, and in behalf of said State gives the court to understand and be informed that the Twin Village Water Company did on the first day of October, in the year of our Lord one thousand nine hundred and two, usurp and still continues to usurp the following liberties, privileges and franchises, to wit:

In that during the time aforesaid it has exercised the powers, privileges and immunities incident by law to a corporation aggregate, and as such has claimed a franchise to furnish electric lights for lighting streets in the towns of Nobleboro, Newcastle and Damariscotta, and to dispose of electric light and power to individuals and corporations therein, all which liberties, privileges and franchises the said Twin Village Water Company during said time hath usurped upon said State, and still doth so usurp, to the great damage of said State.

And the said Attorney General, by virtue of his office aforesaid, and in behalf of said State, further gives the court to understand and be informed as follows:

1.  By chapter six hundred and seven of the Private and Special Laws of Maine for the year one thousand eight hundred and ninety-three the Twin Village Water Company, then known by the name of the Glidden Water Illuminating and Power Company, was duly authorized by the Legislature of Maine to furnish water for the extinguishment of fires and for domestic, sanitary and municipal uses to the towns of Nobleboro, Newcastle and Damariscotta and the inhabitants thereof, and to furnish electric lights for lighting streets in said towns and to dispose of electric light and power to individuals and corporations.

2.  That by chapter ten of the Private and Special Laws of Maine for the year one thousand eight hundred and ninety-five the name of said corporation was changed from the Glidden Water Illuminating and Power Company to the Twin Village Water Company, and it was therein provided that in case no portion of the works of said corporation should be put into operation within four years from the date of the approval of said Act, the rights and privileges therein granted should be null and void, and said Act was approved on the first day of February of said year one thousand eight hundred and ninety-five.

3. That prior to the first day of February, one thousand eight hundred and ninety-nine, the said corporation organized under its charter and the amendment thereof aforesaid, and put into operation a portion of its works within four years from the date of the approval of said chapter ten of the Private and Special Laws of the year one thousand eight hundred and ninety-five by building a waterworks plant and by commencing the furnishing of water for the extinguishment of fires and for domestic, sanitary and municipal uses to the towns of Newcastle and Damariscotta prior to the first day of January in the year one thousand eight hundred and ninety-seven, and has ever since continued to operate the said water plant.

4. That the said Twin Village Water Company has neglected since the passage of said chapter six hundred and seven of the Private and Special Laws for the year one thousand eight hundred and ninety-three to furnish electric lights for lighting streets in the towns of Nobleboro, Newcastle and Damariscotta, and to dispose of electric light and power to individuals and corporations therein as by its charter aforesaid provided.

And the said Attorney General gives the court to understand and be informed that the said Twin Village Water Company has long since, to wit: on the thirtieth day of September, in the year of our Lord one thousand nine hundred and two, forfeited all its franchises under its charter aforesaid to furnish electric lights for lighting streets in said towns of Nobleboro, Newcastle and Damariscotta, and to dispose of electric light and power to individuals and corporations therein, together with all the rights, privileges, powers, immunities, liberties and franchises aforesaid thereunto appertaining by law.

(1.) Because he says that by the acceptance of the aforesaid charter and of the franchise therein created so to furnish electric lights and power as aforesaid, the said Twin Village Company became charged with the public duty of furnishing electric lights for lighting streets in the towns of Nobleboro, Newcastle and Damariscotta, and of disposing of electric light and power to individuals and corporations therein, and of thereby serving the public.

(2.) Because the said Twin Village Water Company has neglected and unreasonably refused for a period of more than nine years to

perform its aforesaid public duties under its contract with the State so to do.

(3.)  Because the said Twin Village Water Company has wilfully, intentionally and unlawfully refused to perform its aforesaid chartered duties and has abandoned the same.

(4.)  Because the aforesaid franchise so to furnish electric lights for lighting streets in said towns of Nobleboro, Newcastle and Damariscotta and to dispose of electric light and power to individuals and corporations therein became the property of the State of Maine on said thirtieth day of September in the year of our Lord one thousand nine hundred and two, when so forfeited as aforesaid, but the said Twin Village Water Company so illegally wrongfully withheld the same from the State since the said thirtieth day of September as aforesaid down to the present day, and has claimed and is still claiming to hold the said franchise as its own, and is illegally and unlawfully preventing the occupation of said streets by any other corporation that might otherwise be lawfully authorized to occupy the same, to the great detriment of the public and in violation of the trusts of its charter, and in wilful perversion of the objects, duties and public obligations thereof.

And the said Attorney General further gives the court to understand and be informed that the foregoing illegal acts and doings by the said Twin Village Water Company done and performed, and the failures and omissions to do and perform the acts by the said charter and Act amendatory thereto required, and the forfeiture of all charter rights consequent thereon for furnishing electric lights as aforesaid for said towns, and notwithstanding the expiration of all charter rights as aforesaid, the said Twin Village Water Company has during all the time since said thirtieth day of September, one thousand nine hundred and two, now last past, usurped and doth usurp from said State the liberties, privileges and franchises following, to wit:

The powers, privileges and immunities incident by law to a corporation aggregate to furnish electric lights for lighting streets in the towns of Nobleboro, Newcastle and Damariscotta, and to dispose of electric light and power to individuals and corporations therein, all which liberties, privileges and franchises the said Company during

said time hath usurped and still doth usurp from said State, to its great damage and injury.

Wherefore the said Attorney General prays the advice of the court in this behalf in the premises, and that due process of law may be awarded against the said Twin Village Water Company in this behalf, to answer to this court by what warrant it claims to use and exercise the powers, privileges and franchises aforesaid.

Dated this twenty-ninth day of October, in the year of our Lord on thousand nine hundred and two.

GEO. M. SEIDERS,
*Attorney General for the State of Maine.*

(Order of Notice.)

{ SEAL }     Upon the foregoing petition it is ordered, that the petitioner give personal notice to the said Twin Village Water Company of the pendency thereof, serving an attested copy of said petition and of this order of Court thereon thirty days at least before the next Term of the Supreme Judicial Court to be holden at Wiscasset in and for the County of Lincoln on the fourth Tuesday of April, A. D. 1903, that it may then and there appear at our said Court and show cause, if any it have, why the prayer of said petition should not be granted.

LUCILIUS A. EMERY,
*Justice, S. J. Court.*

Oct. 31, 1902.

(Officer's Return.)
STATE OF MAINE.

Cumberland, ss.                          November 3d, 1902.

I this day made service of the within petition and order of Court upon the Twin Village Water Company by giving to Herman M. Castner, its President, in hand a copy thereof, said copy being duly attested by Charles L. Macurda, Clerk of Courts for said County of Lincoln.

. C. L. BUCKNAM,
*Deputy Sheriff.*

*Answer of Twin Village Water Company Corporation*
*to said Information.*

The said Twin Village Water Company Corporation denies that it has usurped on the first day of October, in the year of our Lord one thousand nine hundred and two, and denies further that it does now usurp any liberties, privileges or franchises as alleged in said Information, and asserts that if it has during the time aforesaid exercised the powers, privileges and immunities incident by law to a corporation aggregate, and if it has as such claimed a franchise to furnish electric lights for lighting streets in the towns of Nobleboro, Newcastle and Damariscotta, and to dispose of electric light and power to individuals and corporations therein, it has rightfully done so under power and authority conferred upon it by the Legislature of said State, duly approved.

The said Twin Village Water Company Corporation admits and relies upon the several Legislative Acts set out in said Information of said Attorney General, which are mentioned in paragraphs one (1), two (2) and three (3) thereof, and derives its power and authority to exercise the liberties, privileges and franchises before mentioned, under said Acts, and asserts that it has fully complied with and performed all and singular the conditions imposed upon it by said Legislative Acts.

And the said Twin Village Water Corporation denies that on the 30th day of September, in the year of our Lord one thousand nine hundred and two, it has forfeited all of its franchises under its charter aforesaid, to furnish electric lights for lighting streets in said towns of Nobleboro, Newcastle and Damariscotta, to dispose of electric light and power to individuals and corporations therein, together with all the rights, privileges, powers and immunities, liberties and franchises aforesaid, as specified and set forth in paragraph four (4) of said Information and in the four subdivisions or specifications of said paragraph four (4).

And the said Twin Village Water Company Corporation further asserts and gives this Honorable Court to be informed, that said

Twin Village Water Company Corporation is a corporation chartered by special acts of the Legislature of the State, by chapter 607 of the Private and Special Laws of the State of Maine for the year 1893, as amended by chapter 10 of the Private and Special Laws of the State of Maine for the year 1895, and as further amended by chapter 335 of the Private and Special Laws of the State of Maine for the year 1897, all of which Acts, together with the Act of incorporation set forth in and by ch. 239 of the Private Laws of 1887, being herein referred to, are made and form a part of this answer to said Information, and said Twin Village Water Company Corporation asserts that said Act of Chapter 607 of the year 1893, as amended, was a continuation of said chap. 239 of the Private Laws of 1887, with the addition of the right to furnish electric light in said towns, which addition was necessary because of the inability of the incorporators to finance said company unless by its charter it had the right to furnish lights as well as water in and to said towns.

And the said Twin Village Water Company Corporation further asserts and gives this Honorable Court to be informed, that by said charter the said Twin Village Water Company Corporation is authorized to furnish electric lights for lighting the streets of Nobleboro, Newcastle and Damariscotta, and to dispose of electric light and power to individuals and corporations therein; that said company is further authorized by said charter, for accomplishing the purposes of its incorporation, to lay down pipes, set poles, and extend wires in and through the streets and ways in said towns of Nobleboro, Newcastle and Damariscotta, and to take up, replace and repair all such pipes, poles and fixtures as may be necessary for such purposes; and that it is authorized for such purposes to contract with said towns of Nobleboro, Newcastle and Damariscotta, with the village corporations that may exist, or either of said towns, and with other corporations and individuals; and is by said charter authorized to make, generate, sell, distribute and supply electricity in the towns aforesaid.

And the said Twin Village Water Company Corporation further asserts and gives this Honorable Court to be informed, that the amendment to the charter of the defendant corporation as made by chapter 10, Private and Special Laws of the State of Maine for the

year 1895, among other things provided, "In case no portion of the works of this corporation shall have been put into operation within four years from the date of the approval of this Act, the rights and privileges herein granted shall be null and void;" that the Act containing said clause was approved on the first day of February, A. D. 1895; that the said Twin Village Water Company Corporation began actual operations under said charter and put into operation some portion of its works on or before the first day of January, A. D. 1897, and has ever since said time continued to operate its works under said charter and to perform all duties therein imposed upon it; and that the franchise of said Twin Village Water Corporation now and ever has been in all respects in full force and virtue.

And the said Twin Village Water Company Corporation further asserts and gives this Honorable Court to be informed, that by virtue of its said charter, by virtue of the rights and privileges thereby conferred, the performance of its duties therein imposed, and the laws of the State of Maine, the said Twin Village Water Company Corporation has acquired special and exclusive privileges and rights and is authorized to accumulate, store, sell and distribute water, to make, generate, sell, distribute and supply light in the towns and places aforesaid until such rights and privileges shall be abridged by special act of the Legislature of the State of Maine; that under, by virtue of and depending upon its rights and privileges aforesaid, the said Twin Village Water Company Corporation has expended large sums of money in the development of its plant and property, and in performing and preparing itself to perform and conduct the business which it is, as aforesaid, authorized to do, and the public duties imposed upon it under said charter, and has therefore acquired and has the control of a water privilege and is storing, distributing and supplying water in said towns of Nobleboro, Newcastle and Damariscotta, and has built a power house and other structures sufficient for and with the intention of fulfilling all its purposes and all business it is authorized to do, and has installed steam power therein; and that the same has been done within the time mentioned in said charter and the amendment thereof, made by chapter 10 of the Private and Special Laws of the State of Maine for 1895, with a purpose and view of exercising

all the rights conferred by said charter and the amendments thereof to the fullest extent; and that in the development of its said plant and the exercise of its rights aforesaid it intends in good faith to conduct all branches of business authorized by said charter and the amendments thereto.

And the said Twin Village Water Company Corporation further asserts and gives this Honorable Court to be informed, that upon the faith of its rights and privileges aforesaid, and secured by a mortgage of its franchise and property, it has issued, negotiated and sold a large number of its bonds; that the value of the franchise and property of the said Twin Village Water Company Corporation is in large part dependent upon its rights as in this paragraph of this answer is set forth, and upon its right and authority to generate, sell, distribute and supply light in said towns of Nobleboro, Newcastle and Damariscotta.

And the said Twin Village Water Company Corporation further asserts and gives this Honorable Court to be informed, that it has in all things done and performed by it, under and by virtue of its rights, privileges, powers, immunities and franchises aforesaid granted, acted in good faith, and has ever been ready and desirous of installing electric lights in the towns aforesaid, but has never been able to obtain any encouragement from the inhabitants of said towns, or either of them, although it has attempted so to do, sufficient to warrant the installing of an electric plant and equipping the same for the purpose mentioned in said charter.

And the said Twin Village Water Company Corporation further asserts and gives your Honorable Court to be informed, that it has complied with every condition precedent, if any, contained in this charter and the amendments thereof, and if there are any conditions subsequent, contained in said charter and the amendments thereof, which this Honorable Court shall find have not been fully performed, this corporation respectfully submits that they are not such as to warrant the Court in sustaining the Information of the Attorney General in this behalf; and the the said corporation respectfully contends that there has been a substantial compliance with and a readi-

ness to perform every condition mentioned in said charter and the amendments thereof on the part of this said corporation, and that it has acted in good faith, not only for the best interests of the corporation but of the public.

And the said Twin Village Water Company Corporation further asserts and gives this Honorable Court to be informed, that at the last session of the Legislature of this State, to wit: in the year 1903, the Legislature acting for and in behalf of the State, had its attention called to the question which is raised by this Information, and the Legislature, after a full examination of the question, refused to act or disturb this corporation in the exercise of the powers, liberties and franchises conferred upon it as hereinbefore set forth.

And the said Twin Village Water Company Corporation further submits that it has reason to believe and does believe that this proceeding was not instigated by the Attorney General of his own motion, and solely out of regard to the rights and interests of said State, but that he has simply allowed his name and office to be used by private parties in bringing this proceeding for their own purposes and for the purposes of competition with the vested rights, liberties, privileges and franchises of this corporation.

Wherefore said Twin Village Water Company Corporation denies that since the thirtieth day of September, in the year of our Lord one thousand nine hundred and two, or at any time, it has usurped, or has ever usurped from said State any liberties, privileges or franchises, or that it doth still usurp the same, but asserts and claims that all the liberties, privileges, powers and franchises exercised by it have been conferred on it by the Legislature of said State, and that all conditions, to the present existence and continuance of all said liberties, powers, privileges and immunities incident by law to a corporation aggregate, to furnish electric lights for lighting streets in the towns of Nobleboro, Newcastle and Damariscotta, and to dispose of electric light and power to individuals and corporations therein, as well as all conditions, to the present existence and continuance of all said liberties, privileges, powers and franchises contained in any of the legislative acts referred to in said Information, or in this answer, have been fully complied with, or if any of them have not

been complied with, the same have been waived on the part of the State.

TWIN VILLAGE WATER COMPANY

By Enoch Foster,
Arthur S. Littlefield, } *Attorneys.*

The plaintiff at the hearing in the court below rested on the information and answer for a prima facie case. After the introduction of evidence by the defendant, the parties agreed that upon so much of the evidence as is legally admissible the full bench were to render such judgment as the legal rights of the parties might require.

*H. M. Heath, C. L. Andrews, and F. L. Dutton; H. E. Hall,* for plaintiff.

1. The forfeiture of a franchise is not confined to the franchise as an entirety. It was distinctly decided in the *Oldtown Bridge case,* 85 Maine, 17, that there may be judgment of forfeiture of a part of a franchise and of re-seizure into the custody of the State of that portion of the franchise forfeited.

In *Comm.* v. *Sturtevant,* 182 Pa. St. 323, it was decided that quo warranto lies to forfeit the exclusiveness of a franchise as well as to forfeit the entire franchise itself. In the following cases judgment was rendered for ouster of part of the franchise. 84 Cal. 118; 10 Conn. 167; 31 Kans. 454; 43 Pa. 301; 35 Ohio, 264; 26 Ohio, 399.

2. The ground of forfeiture alleged is such long continued nonuser of the electric light franchise contained in the respondent's charter as to raise a legal presumption of abandonment.

All charters are granted upon a tacit condition that the grantee shall act up to the end or design for which they were incorporated. Wood on Railroads, Vol. 3, p. 2085. This clearly means within a reasonable time. Territory cannot be occupied by a railroad charter or an electric light franchise perpetually without building, and certainly if not perpetually then the limit must be some reasonable time according to the circumstances of each particular case.

It cannot be controverted that all charters of public corporations contain an implied condition that the corporation will within a reasonable time faithfully execute the purposes of the grant, and that if not

executed the State as the grantor may re-take its grant for condition broken. The following cases hold that it is the tacit condition in every charter that the State may resume its franchise for non-user. *Donald* v. *State*, 48 Ark. 321; *Ward* v. *Farwell*, 97 Ill. 593; *State* v. *Minn. Central Railway,* 36 Minn. 246; *McIntire Poor School* v. *Zanesville*, 9 Ohio, 203; S. C. 34 Am. Dec. 436.

Booth, on Street Railways, § 51, says that a franchise to occupy and use streets for railway purposes may be lost by non-user, and the forfeiture, when not declared by statute or ordinance, may be enforced by proceedings in quo warranto.

Morawetz, on Private Corporations, discusses the question of the power of court to compel the construction of a railroad by mandamus, and holds the better rule to be that no such power exists, upon the ground that forfeiture of the franchise for non-user is a sufficient remedy for the State.

In *Heard* v. *Talbot*, 7 Gray, 119, it was held that non-user or failure to perform the express or implied duties of a charter is a cause of forfeiture.

3. That the Twin Village Water Company has been so financed in the past as to be unable financially to utilize its electric light franchise is no defense.

The court say in *People* v. *Plainfield Avenue Gravel Road Co.*, 105 Mich. 9, that inability to perform its functions, no matter what the reason is, is one of the most potent grounds for forfeiture. The plea of financial disability is a confession.

The court held in *Chesapeake & Ohio Canal Co.* v. *Baltimore & Ohio R. R. Co.*, 4 Gill & Johns. 1, that non-user, abuse or neglect of franchises is cause of forfeiture, their being a tacit condition in every such grant that a corporation shall act up to the end of its institution. So, too, an inability through misfortune to answer the design for which the body politic was instituted is also a cause of forfeiture. In *Penobscot Dam Co.* v. *Lamson*, 16 Maine, 231, it was held by way of dictum that franchise may be lost by any neglect of corporate duty.

4. No question is raised by the pleadings as to parties, but the authorities are uniform that it is unnecessary in a case like this to bring into court any party save the corporation itself.

It is the uniform rule that all parties having an interest in a franchise by way of mortgage, bond, contract, license or title of any kind are bound by causes of forfeiture that happen while the franchise and the duties thereto appertaining are under the control of the corporation.

So decided in *Com.* v. *Turnpike Co.*, 5 Cush. 509, where the court held that the Commonwealth knows no adverse party but the corporation. The court said that all having any pecuniary interest in the loss must use needful vigilance to protect their interests without being made parties. For similar rulings see *People* v. *Globe Mutual Life Insurance Co.*, 91 N. Y. 174; *Silliman* v. *Railroad Co.*, 27 Gratt. 119; *Campbell* v. *Talbot*, 132 Mass. 174.

*Enoch Foster and O. H. Hersey; A. S. Littlefield and K. M. Dunbar*, for defendant.

Necessary allegations: Thompson Corp. §§ 6608, 6793, 6798; *State* v. *Atchison, etc., R. R. Co.*, 24 Neb. 164, 8 Am. State Rep. p. 181, note. Burden of proof: High Ex. Rem. 2nd ed. § 667, a; Thompson Corp. § 6804.

Failure complained of is a condition subsequent and a liberal construction is to be given; performing as near as possible is sufficient: *State* v. *Real Estate Bank*, 5 Ark. 595, 41 Am. Dec. p. 113. Failure must be wilful: High Ex. Rem. § 648; *Com.* v. *Commercial Bank*, 28 Pa. St. 389; *State* v. *Pawtuxet Corp.* 8 R. I. 188; Thompson Corp. § 6608.

Reasonable allowance must be made for circumstances and conditions: *Commercial Bank of Natchez* v. *State*, 6 Smed. & Mar. 623, 53 Am. Dec. p. 108–9; Thompson Corp. § 6613. Failure to perform the impossible is no ground of forfeiture: *People* v. *Kingston Turnpike Co.*, 23 Wend. 193, 35 Am. Dec. 555. Duty not absolute; public demand for performance an important element: *Com.* v. *Fitchburg R. R. Co.*, 12 Gray, 180, 188–189.

Discretionary powers of the court: *State* v. *Atchison R. R. Co.*, supra; Thompson Corp. § 6617. Forfeitures not favored: *State* v. *Atchison R. R. Co.*, supra.

Abandonment: *Raritan Water Power Co.* v. *Veghte*, 21 N. J. Eq. 463. Legislative waiver: Stat. 1895, c. 102; 23 Am. & Eng.

Ency. Law, 2nd ed. p. 607; *State* v. *Real Estate Bank,* supra; *State* v. *Atchison R. R. Co.,* supra.

This proceeding instituted for private purposes: Thompson Corp. § 6812.

Quo warranto does not lie upon a simple claim of right to a franchise, but only a usurping it: *People* v. *Thompson,* 16 Wend. 654: *Atty. Genl.* v. *Superior & St. Croix R. R. Co.,* 93 Wis. 614; 23 Am. & Eng. Ency. Law, 2nd ed. p. 601; High Ex. Rem. § 602; 17 Ency. Pl. & Pr.. 397, note 4; *Chincleclamouche Lumber & Boom Co.* v. *Com.* 100 Pa. St. 438.

Distinction between franchise and powers: *State* v. *Minn. Thresher Mfg. Co.* 40 Minn. 225.

SITTING: WISWELL, C. J., WHITEHOUSE, STROUT, SAVAGE, PEABODY, SPEAR, JJ.

STROUT, J. Information by the Attorney General, in nature of quo warranto.

By chap. 607 of the special laws of 1893, the Glidden Water, Illuminating and Power Company was incorporated and authorized to furnish water to Nobleboro, Newcastle and Damariscotta and their inhabitants, for domestic, sanitary and municipal uses, and the extinguishment of fires,—and to furnish electric lights for lighting streets in those towns, and to dispose of electric light and power to individuals and corporations. It was also given the right of eminent domain so far as necessary to accomplish the purposes of the corporation. It was also authorized to contract with the towns or any village corporation, and with other corporations and individuals, to supply water or electric light or power. The Act provided that in case no portion of the works of the corporation should be put into operation within two years of the date of the approval of the Act, which was March 28, 1893, "the rights and privileges" granted by the Act should be null and void. By chap. 10 of the special laws of 1895, amending the act of 1893, the name of the corporation was changed to the "Twin Village Water Company," and the time within which some portion of the works should be put in operation, to preserve the charter,

extended to four years from the date of approval of the Act of 1893. This amendment was approved February 1, 1895, and took effect at that date.

On or before January 1, 1897, the company had put in operation its water plant, and has ever since continued such operation and furnished water to the towns under the charter. It has never furnished electric light or power as authorized by its charter. Because of this omission, the State claims that the corporation should be ousted from that portion of its charter which relates to electric lights and power. As this branch of corporate rights· is distinct and separate from the rights as to water, it is competent to render such a decree if the evidence warrants. *King* v. *London*, 2 T. R. 522; *State* v. *Old Town Bridge Corporation*, 85 Maine, 33.

All express conditions contained in the act of incorporation, which are precedent to the right of the corporation to do business, must be substantially complied with before the corporation can exercise its full powers. Express conditions subsequent must also be substantially met, or the corporation will lose its right to continued existence, or the continued exercise of full corporate powers, dependent upon the extent of forfeiture imposed by the condition. *People* v. *Kingston and Middletown Turnpike Road Co.*, 23 Wend. (N. Y.) 193, 205, 35 Am. Dec. 551. In addition to express conditions imposed by the charter, other conditions may be and often are implied, but as to these a somewhat more liberal rule is applied: In this case, the corporation was authorized to supply water and electrical light and power. This authority carried with it the implied obligation to perform all the objects for which the charter was granted, but this duty should be construed with some reference to actual conditions and needs.

It was a condition precedent that the corporation should have in operation some portion of its works, within the limited time. This it did. It had its water plant in operation within the time. It then became vested with the full chartered powers. The Act contemplated that other portions of the works, and of course the duty appertaining thereto, would be further delayed. No time was fixed by the Act within which such remaining portion should be put in operation. The law then would require it to be done within a reasonable time.

The distinction between franchises and powers should not be over-looked.   A "franchise" given by Finch, adopted by Blackstone, and accepted by every authority since, is "a royal privilege or branch of the King's prerogative, subsisting in the hands of a subject."   To be a franchise, the right possessed must be such as cannot be exercised without the express permission of the sovereign power,—a privilege or immunity of a public nature which cannot legally be exercised without legislative grant.   It follows that the right, whether existing in a natural or artificial person, to carry on any particular business, is not necessarily or usually a franchise.   The right given this corporation to furnish electric light and power, aside from the right of eminent domain, authorized a business which was open to any individual, without special legislative grant, and falls within the definition of powers.   In these the public have less interest, than in the use or abuse of franchises, in their nature exclusive, and existing only by grant from the State.   Non-user or misuser of powers, unless carried so far as to amount to a misuser of the franchise to be a corporation, or so substantial and continued as to amount to a clear violation of the condition upon which the franchise was granted, and so derange or destroy the business of the corporation that it no longer fulfils the end for which it was created, are matters for the stockholders, and do not call for interference by the State, nor justify a decree of ouster.   *State* v. *Minnesota Thresher Manuf'g Co.*, 40 Minn. 213, an instructive case upon this subject.

The information alleges that by the Act of 1895, defendant's charter was to become null and void, unless some portion of its works were in operation within four years after February 1 of that year. That within that time it had put in operation a water works plant, but that it has failed to furnish electric lights and power, and "has neglected and unreasonably refused" to do so, and has "wilfully, intentionally and unlawfully refused to perform its aforesaid chartered duties, and has abandoned the same," and is still claiming "to hold the said franchise as its own, and is illegally and unlawfully preventing the occupation" of the streets in the towns "by any other corporation that might otherwise be lawfully authorized to occupy the

same," and has "usurped the liberties, privileges and franchises" appertaining to furnishing electric light and power.

The burden of proof rests upon the State to establish its allegations. There is no evidence of any usurpation by the corporation. Non-action in regard to electricity is all that is shown, and that is in no sense usurpation,—nor is the allegation that defendants prevent the use of streets by any other corporation of any weight. The charter, authorizing the use of streets, is not exclusive. It did not prevent the Legislature from granting like authority to another corporation.

There remains only the fact that the corporation has not furnished electric light and power, which is not denied, as the ground for a decree of ouster.

The evidence shows that the corporation, in erecting its works, made provision for generating electricity, and has steam power sufficient to operate its water works and an electric plant, and is desirous of installing the same, and distributing electricity as soon as the towns or individuals are willing to take it and pay a reasonable price therefor, and that it has made efforts with the towns and individuals to that end, but without success thus far, and that it is ready and willing to do so, whenever it can receive reasonable assurance that it can be done upon a reasonably paying basis. They have not wilfully refused to do this business, nor abandoned the idea of doing it.

Is such a suspension of the exercise of the power to furnish electric light and power, for the time it has existed, sufficient cause to require the court to decree an ouster from the power? We think not. In granting the right, it cannot be supposed that the Legislature intended to impose upon the corporation the duty of establishing an electric plant, with all the appliances for its distribution, when neither the towns nor individuals wanted it or would become purchasers. It looked to the future, and it is not improbable that a different feeling may obtain in the towns in the near future. If so, the preparation already made and expense already incurred to that end, will be available to the corporation, which ought at least to have further time and opportunity to fulfill this one of the objects of its incorporation.

In this view we are not without authority.

Abandonment is a question of intention. Non-user is a fact in determining it. "Its weight depends upon the intention to be drawn from its duration, character and accompanying circumstances." *Raritan Water Power Co.* v. *Veghte*, 21 N. J. Equity, 480. Here the acts of the corporation, as well as the testimony of its officers, negative the intention to abandon, and give a reason for delay.

It has not been wilful, in the sense of a disregard of public interests, but because the towns and their citizens did not want and would not take the electricity. The public has not suffered, because the public did not desire the accommodation.

It is said by the court in *State* v. *Pawtuxet Turnpike Corp.* 8 R. I. 188, "It is not every failure to perform a duty imposed that will work a forfeiture." "A specific act of non-feasance not committed wilfully, and not producing or tending to produce mischievous consequences to any one, and not being contrary to particular requisitions of the charter, will not be" ground for a forfeiture. To the same effect are *Attorney General* v. *The Superior & St. Croix R. R. Co.*, 93 Wis. 612; *Heard* v. *Talbot*, 7 Gray, 119. In *Commonwealth* v. *Fitchburg Railroad Co.*, 12 Gray, 180, the railroad had abandoned running passenger trains upon a branch of its road, because the business was insufficient to support them. The court, recognizing the general principle that conferring powers upon railroad corporations to carry freight and passengers, imposed upon them the duty, at reasonable times and for reasonable compensation, to run trains, held that it had qualifications. The court said, "It is clear that the duty required is not more than to meet and supply the public wants. These are measured by the business actually done, or what could be clearly shown would be done, if increased facilities were granted." No "just implication from the powers and privileges conferred upon the corporation require that trains for passengers or frieght should be provided which are not wanted, or which the business upon the road would utterly fail to support." The information asking forfeiture for failure to run passenger trains was dismissed. The reasoning in that case applies with full force to this.

Until the towns of Nobleboro, Newcastle and Damariscotta, or their inhabitants, desire electric light and power, the defendant cor-

poration may well be excused from the exercise of its chartered powers in that regard. When the towns, or their inhabitants, in sufficient numbers to justify its exercise, require or will take the electric light and power, it will be the duty of the corporation to furnish it. This, its officers say, it is ready, willing and able to do. If at that time the corporation fails to supply the demand, it will be derelict in its duty, and an application for ouster may be sustained. Meantime, neither the general public, nor that of the three towns, can suffer inconvenience from the unexercised power held by the corporation. Ouster of the corporation at this time can be of no benefit to any one, but may be a possible, perhaps probable, serious loss to the corporation, and therefore unjust.

The Legislature at its last session, has indirectly expressed an opinion on the subject, when it refused to charter a gas company for Damariscotta and Newcastle.

*Information dismissed.*