Wright and others vs. The Milwaukee Electric Railway & Light Co.

WRIGHT and others, Respondents, vs. THE MILWAUKEE ELECTRIC RAILWAY & LIGHT COMPANY, Appellant.

*December 18, 1896 — January 12, 1897.*

*Street railways: Transfer of franchise to operate road: Easement: Imposed duties: Voluntary surrender: Nonuser.*

1. A franchise to operate a street railway is inalienable at common law, but authority to sell and transfer it may be conferred by statute. In this state such authority is given by subd. 7, sec. 1748, R. S., and by ch. 221, Laws of 1883, as amended by ch. 127, Laws of 1891.

2. A franchise to operate a street railway is not merely an easement to use the street for the time, in the manner, and under the conditions specified in the grant, and, when accepted and acted upon by the grantee, a contract between it and the public, but it is also a grant from the state, by the acceptance of which the grantee

| | |
|---|---|
| 95 | 29 |
| f95 | 41 |
| 95 | 29 |
| 97 | 117 |
| 95 | 29 |
| 101 | 90 |
| 95 | 29 |
| 105 | 673 |
| 95 | 29 |
| 107 | 445 |
| 95 | 29 |
| 110 | 2643 |
| 95 | 29 |
| 114 | 2249 |
| 114 | 2336 |
| s36 LRA | 47 |
| 52 LRA | 481n |
| 95 | 29 |
| 116 | 2153 |

becomes charged with the duty of serving the public, from which it cannot emancipate itself by merely ceasing to operate its cars.

3. A street railway was not operated on two blocks during four years and eight months, a period of great industrial depression, and of extraordinary financial difficulties on the part of its successive owners. During that time, the track had been taken up with the knowledge and acquiescence of the owner and the street paved, but the means of locomotion had also been changed, rendering the old track practically worthless and an entire reconstruction necessary. An ordinance declaring the franchises over such blocks forfeited was introduced, but upon the representation of the then owner that it was its intention to operate the road over such blocks in the near future, was not adopted. Any intention to abandon its rights in the street was expressly denied by the officials of the road. *Held*, that the nonuser of the franchises had not existed for such a length of time or under such circumstances that surrender of the franchises and its acceptance by the state could be presumed. *Combes v. Keyes*, 89 Wis. 297, distinguished and limited.

APPEAL from an order of the superior court of Milwaukee county: R. N. AUSTIN, Judge. *Reversed.*

This is an action in equity brought by three property owners, owning lots abutting upon Twenty-Seventh street, otherwise called Washington avenue, in the city of Milwaukee, to obtain a permanent injunction against the *Milwaukee Electric Railway & Light Company*, enjoining it from laying street-railway tracks through said street in front of the plaintiffs' property. A temporary injunctional order was made *pendente lite*, and the defendant appealed. The facts appearing upon the complaint and the affidavits filed upon both sides on the hearing of the motion for an injunction were not materially in dispute, and are substantially as follows: On the 1st of June, 1874, an ordinance was passed by the common council of the city of Milwaukee granting to John H. Tesch and others and their successors and assigns the right to lay street-railway tracks upon certain streets in the city of Milwaukee, named in the ordinance, and to maintain and operate a horse railway thereon until the 1st day of July, 1924. The street in question in

this suit was not included within the ordinance.   The ordi-
nance provided that the grantees and their assigns should
complete and operate two miles of railway within two years
from the 1st day of July, 1874, and the entire balance of
the lines within ten years from that date, "and, upon the
failure to complete and operate the said railway as above
provided, then all rights hereby granted and vested shall
cease and determine."   The ordinance contained further con-
ditions and requirements as to the cars and tracks, and the
use thereof, and the rate of the fare, but did not contain
any further provisions as to forfeiture of the rights granted,
by nonuser.

Under this ordinance, a street railway was constructed
upon all the streets named in the same, and within the time
required by the conditions of the ordinance.   In August,
1886, said railway had passed into the hands of the West
Side Street Railway Company, by purchase and assignment;
one of its lines running from the central portion of the city
west on Grand avenue and Wells street, and crossing
Twenty-Seventh street near the west city limits.   At this
time it was proposed to hold the State Fair upon certain
grounds in the city of Milwaukee, and about four blocks north
of Wells street; and it was made a condition upon which
the holding of the fair in Milwaukee depended that a street-
railway line should be completed by the West Side Street
Railway Company to the proposed fair grounds.   It appears.
further that the railway company consented to construct
said line from Wells street north, on Twenty-Seventh street,.
for a distance of four blocks, provided the city would grant
them a franchise therefor.   Thereupon an ordinance was.
passed by the city council August 2, 1886, granting to the
railway company, its successors and assigns, the right to,
lay such railway track along said Washington avenue or
Twenty-Seventh street, commencing at Wells street and
running thence northerly four blocks to Chestnut street;.

such ordinance being granted under and subject to the same conditions as were provided in the previous ordinance herein named. In accordance with this ordinance, in September, 1886, a double horse-railway track was laid in said street, and the same was operated in September, 1886, during the holding of the State Fair. From this time, until and including the fall of 1891, the railway was operated upon said street during the holding of the State Fair in each year, and at other irregular intervals when circuses were held upon the fair grounds, but in the intervals the road along these four blocks was not operated.

In the year 1889 an ordinance was passed by the city council authorizing the use of electricity as a motive power upon the street railways operating in Milwaukee, and in 1890 the lines of the railway company, including the line upon the four blocks in question, were equipped with trolley poles and wires, and thereafter operated by electricity.

In September, 1891, the lines and franchises of the West Side Street Railway Company had come by purchase and assignment into the ownership of the West Side Street Railroad Company, and a contract was made in that month for the sale of all the stock of the said last-named company to the North American Company, in the interest of a new corporation, called the Milwaukee Street Railway Company; the contract being made to the North American Company pending payment of the purchase price. It was apparently expected at the time of the making of this contract that the possession of the North American Company was to be temporary only, but, by reason of financial difficulties, no conveyance was made to the Milwaukee Street Railway Company until January, 1894. In the meantime it was ascertained that the ordinary horse-railway track was too lightly constructed for the purposes of an electric railroad, and that, before any continuous operation by electricity, new and heavier rails must be laid.

In the summer of 1892 the city of Milwaukee caused to be paved with cedar blocks the two blocks in question, at the expense of the adjoining property owners, and the rails of the street-railway company were taken up; but the electric poles and wires, except the trolley wire, were left in place. These two blocks remained in this condition until May 24, 1896, and they are the two blocks in question in this action. The remaining two blocks covered by the franchise were not paved, and they have been operated continuously at all times. The Milwaukee Street Railway Company acquired, by conveyance, all of the street-railway property in Milwaukee, including this franchise, in January, 1894; and mortgaged its property and franchises at the same time to the Central Trust Company of New York. Foreclosure of this mortgage was commenced May 24, 1895. In the fall of 1895 the remaining two blocks of Twenty-Seventh street covered by the franchise were paved with cedar blocks, and at the same time the railway thereon was reconstructed with an appropriate electric roadbed and rails. December 2 of the same year, an ordinance was introduced in the common council repealing certain street-railway franchises, and including the franchise for the two blocks in question here, and the same was referred to the railway committee. In January, 1896, a sale was made under a final decree in foreclosure, which had been previously entered, by which all the street-railway properties of the Milwaukee Street Railway Company were sold and conveyed to the *Milwaukee Electric Railway & Light Company*, the defendant in this action. In the winter of 1896 the president of the new company appeared before the railway committee of the common council, and objected to the forfeiture of the franchise upon the two blocks in question, on the ground that the company intended to reconstruct and operate the same in the following spring. Thereupon the clause of the ordinance forfeiting the franchise for the

two blocks in question was stricken out, and the ordinance was then passed. Soon after midnight on the 24th day of May, 1896, being Sunday, the defendant commenced to reconstruct its track on Twenty-Seventh street, between Wells and State streets, with a force of about 200 men; and about noon of the same day, after the work had progressed to a considerable extent, and the street had been largely torn up and part of the tracks laid, this action was commenced for a permanent injunction, on the ground that the franchise had been forfeited and abandoned; and a temporary restraining order was granted until the hearing of the motion for the injunctional order *pendente lite*. Upon the hearing of said motion, the order in question, from which this appeal is taken, was granted.

For the appellant there was a brief by *Miller, Noyes, Miller & Wahl*, and oral argument by *Geo. P. Miller*. They argued, among other things, that the right of the defendant to the use of a street for its railway is a franchise granted on behalf of the state by the city authorities, and its acceptance constituted not a mere contract with the city, but an assumption of a duty to build and operate the road; of which duty the defendant could not relieve itself by abandonment or nonuser. *State ex rel. Cream City R. Co. v. Hilbert*, 72 Wis. 190; *Chicago Gen. R. Co. v. Chicago City R. Co.* 62 Ill. App. 522; *People v. A. & V. R. Co.* 24 N. Y. 261, and cases cited by the court. Only the state could change or waive the condition of the contract. Here no intention on the part of the defendant to abandon its rights was shown, but the contrary. Nonuser might be a ground of forfeiture, but does not operate *ipso facto*. *Strong v. McCagg*, 55 Wis. 629; *Sleeper v. Goodwin*, 67 id. 585; *Ashland v. Wheeler*, 88 id. 617.

*W. J. Turner*, for the respondents, contended that equity might give relief against the unlawful use of a street, in a suit by abutting owners. *Pettibone v. Hamilton*, 40 Wis.

402, 415; *Taylor v. Bay City St. R. Co.* 80 Mich. 77; *Fanning v. Osborne*, 102 N. Y. 441; Booth, Street Railway Law, § 100.    The rights of defendant have been lost by abandonment.    *Henderson v. Cent. Pass. R. Co.* 21 Fed. Rep. 358.

WINSLOW, J.    The question presented is whether the right and duty to operate a street railway over the two blocks in front of the plaintiffs' lots had been extinguished at the time of the commencement of this action.    The power to grant the right in question was conferred upon the city by the provisions of sec. 1862, R. S. 1878, as amended by ch. 219, Laws of 1881.    At common law such a franchise or right was undoubtedly inalienable.    *State ex rel. Milwaukee St. R. Co. v. Anderson*, 90 Wis. 550.    A sale and transfer thereof may, however, be authorized by statute.    *Chapman Valve Mfg. Co. v. Oconto W. Co.* 89 Wis. 264.    Such authority has been granted by the statutes of this state.    Laws of 1883, ch. 221, as amended by Laws of 1891, ch. 127.    The statute also authorizes a corporation to mortgage its franchises.    R. S. 1878, sec. 1748, subd. 7.    So, it would seem that there can be no question but that the various conveyances and assignments by which the franchise in question has finally come into the ownership of the present defendant are valid and operative.    Such being the case, it will be necessary to consider the legal nature of the right to lay tracks and operate a street railroad in a public street.

Such a right necessarily includes an easement to use the street for the time, in the manner, and under the conditions specified in the ordinance.    The ordinance, when accepted and acted upon by the grantee, becomes also a contract between the public, acting through the city council, on the one hand, and the railway company, on the other; the consideration for the partial surrender of the street being the advantages to the public arising from inexpensive and rapid transit, and the assumption by the company of the duty of

continuing to furnish such transit during the life of the ordinance. But the right under consideration is something more than an easement, and more than a mere contract right. It is also a franchise granted by the state, acting through the common council of the city, to the railroad company. It becomes, when owned by a corporation, one of its corporate franchises, for failure to exercise which an action may be brought by the attorney general, in the name of the state, to vacate its charter, under sec. 3241, R. S. 1878. This was held in the case of *State ex rel. Att'y Gen. v. Madison St. R. Co.* 72 Wis. 612, and has been affirmed in principle in numerous later decisions. *Ashland v. Wheeler,* 88 Wis. 607; *State ex rel. Milwaukee St. R. Co. v. Anderson,* 90 Wis. 550; *State ex rel. Att'y Gen. v. Janesville W. Co.* 92 Wis. 496.

By the acceptance of the terms of the ordinance, the railroad company assumed a public trust. It undertook to serve the public, by affording it rapid transit; and it became its duty to continue that service, not simply because it had contracted so to do, but because it had become charged with such duty by legislative grant. It could not lay down the burden when it chose, nor emancipate itself by merely ceasing to operate its cars. In case of attempt on its part to so shirk its duty as to a part of its road, it could, doubtless, be compelled, in proper proceeding, to resume its operation, and carry out the public duty which it voluntarily assumed. *Attorney General v. W. W. R. Co.* 36 Wis. 466–497. Certainly, in such case, action could be brought under sec. 3241, R. S., by the state, to forfeit its franchises and vacate its charter, for failure to exercise its public powers and perform its duties.

Coming now to the question whether the franchise has been extinguished in the case before us, it is quite apparent that there are only four ways in which it can be claimed that such extinguishment could take place, viz.: (1) By operation of some self-executing forfeiture clause in the grant;

(2) by surrender of the franchise, and acceptance of such surrender on the part of the state; (3) by the decree of a court of competent jurisdiction, in an action brought for the purpose; (4) by abandonment or nonuser for so long a period that a surrender and acceptance will be presumed. There are no facts in the case upon which it can be claimed that the franchise has been extinguished in either of the first three ways above mentioned. There was no self-acting forfeiture clause in the ordinance which granted the franchise. There has been no surrender thereof, and acceptance of such surrender by the state, and no action has been brought to declare and enforce the forfeiture. There remains, then, for consideration, only the question whether it has been wiped out by nonuser for more than four years. It is argued that from this fact an abandonment of the franchise has resulted. It is evident that the term "abandonment," as applied to a corporate franchise of this kind, is a misnomer. A mere privilege or right may, perhaps, be properly said to be abandoned in a proper case, although even in that case there must be something more than mere nonuser to constitute such abandonment. There must also be an act clearly indicating an intention to abandon. Washb. Easements (3d ed.), 661. But, while a mere easement or right may be abandoned, the word is plainly inapplicable to a duty owing to the state. A public duty is not to be laid down at will. In the case of a mere easement there is but one party interested, and he may voluntarily abandon his right; but in case of a public duty there are two parties beneficially interested,— i. e. the party who owes the duty, and the state to which the duty is owing. The necessary result must be that, in order to extinguish the duty, there must be concurrence on the part of the state. It has been held that a total nonuser of the franchises of a corporation may exist for so long a period and under such circumstances that a surrender of its franchises by the corporation, and

acceptance of such surrender on the part of the state, will be presumed. The cases holding this doctrine are cited in *Combes v. Keyes*, 89 Wis. 297, and *Attorney General v. S. & St. C. R. Co.* 93 Wis. 604. The doctrine cannot be said to have been adopted by this court, however. In *Combes v. Keyes*, which approaches nearest to it, there had been complete nonuser for twenty-six years, and legislative acts impliedly accepting the surrender; and it was held that the corporation had passed out of existence. Similar is the case of *Henderson v. C. P. R. Co.* 21 Fed. Rep. 358, where nonuse of a street-car franchise for ten years, followed by a repeal of the franchise and a legislative grant of the same right to another company, was held to extinguish the first franchise. The present case, however, is not such a case. The period of nonuse here was about four years and eight months. It was a period of great industrial depression, and of extraordinary financial difficulties on the part of the various corporations which successively owned the franchise. The old track became, by reason of the change in means of locomotion, practically worthless, and its entire reconstruction a necessity. It appears by affidavits of officials of the roads that it was always the intention to resume operation of these two blocks as soon as the financial atmosphere cleared. An ordinance declaring this franchise, with others, forfeited was introduced in the common council; but, upon representation by the company that it was the intention of the new company to operate the road over these blocks in the near future, the clause forfeiting the franchise on the two blocks in question was stricken out. The only fact which can be claimed to indicate an *intention* to abandon the franchise is the fact that in 1892 the street was paved with wooden blocks, at the expense of the adjoining property owners, and that the old rails and ties were then taken up, with the knowledge and consent of the company. This fact, however, loses much of its apparent significance in view of the

changes in roadbed made necessary by the introduction of electricity, and in view, also, of the other facts just referred to.

This, then, is the situation: There has been no cesser to use, accompanied by any act clearly indicating an intention to abandon the right. Even if it could be said that there was any such act, there has been no consent on the part of the public to such abandonment, nor acceptance of a surrender. The nonuse has not existed for such a length of time, or under such circumstances, that a surrender and acceptance of the franchise can be presumed. It follows that, when the plaintiffs commenced their action, the franchise was still in existence, and consequently the injunctional order was erroneous.

*By the Court.*— Order reversed, and action remanded for further proceedings according to law.

