Tbe gist of tbe complaint in tbis ease is tbat tbe defendants are constructing a.street railroad in and along Second street in the village of Delphos, Ohio, under an ordinance which they *318 claim is invalid because tbe owners of a majority of the feet front abutting upon said Second street did not, in writing, consent to the passage of the granting ordinance prior to its passage, and because the construction of said railroad along said Second street in front of the plantiffs’ premises which abut thereon will greaty injure their means of ingress and egress and interfere with their use and occupation of said premises for the purposes of their business as warehouse and elevator men, in this respect injuriously affecting them differently from the manner in which the remainder of the lots abutting upon said street will be affected by the construction and operation of said railroad.
A temporary injunction was allowed by the Probate Court of Allen County, preventing the defendants from prosecuting the work until a final hearing of this action or the further order of. the court. Subsequently the defendant moved this court to vacate said injunction and the matter was heard upon the evidence and argument of counsel, and is for determination on such motion.
It appears from the evidence and the admissions of the parties during the hearing that the council of the village of Delphos established a street railroad route in said village commencing in Monroe street north of the Pennsylvania tracks, running thence to Second street, thence along Second to State street, thence along State street to Ohio street, thence along Ohio street to the west corporation line of the village; that the consents of certain property holders owning property abutting upon said route were presented to the council and the council subsequently, after taking the steps required by law as to advertising and bidding, granted to the defendant traction company the right to construct, maintain and operate a street railroad along said route; that the provision of said ordinance fixing the time within which said railroad must be constructed and in operation, has been extended from time to time until October 1, 1904; that the defendant traction company has entered upon and is proceeding to construct said railroad over a part of said established route, viz., from Douglas street through Second street to State street and at the former point that it departs from said route and runs *319 over private right of way to the corporation line, and at the latter point it continues on westwardly with its track through that part of Second street west of State which has been opened to the public, and- beyond that on private right of way; that-where the proposed railroad passes the premises of the plaintiff in Second street its track is to be in the center of the street and the rails on a level with the surface thereof, and that the said street at that point is 72 feet wide.
It is claimed by the plaintiffs that their right of ingress and egress to and from said lot will be materially injured by the construction and operation of the road, and that by reason of such construction and operation it will be less convenient for farmers and others having grain to deliver and occasion to do business with the plaintiffs, to reach the warehouse of the plaintiffs located on the premises in question, and that the operation of a street railway through said street will deter many of them from dealing with the plaintiffs, especially in view of the fact that Second street furnishes the only means of access to said premises because of certain steam railroad tracks in the street immediately east of said premises. Aside from the averment as to injury to the ingress and egress the petition states no facts showing how the plaintiffs’ easement in said street and their business will be injured by the proposed railroad, and the plaintiffs admit that there is no change of grade contemplated by reason of the construction of the road, and that their ingress and egress will not be affected except in so far as the presence of a street car passing along in front of their premises would make it impracticable, for the time being, for any one to cross the-track. In other words, it is not claimed that the ingress and egress are affected in any manner differently from the way in which the ingress and egress to and from every other lot abutting upon Second street will be affected, and the plaintiffs base their claim of special injury upon the character of the business they are carrying on upon said premises and their apprehended loss -of patronage by reason of the disinclination of farmers and others to drive up to and upon their premises over said street when there is a likelihood of a street car passing along the track of the defendant company in the street.
*320 It is well settled in this state that a street railroad in a municipal street is not an additional servitude, and it is evident, from plaintiffs’ offer of evidence on that point, that no addi-. tional burden in this case can be shown. The owners of lots abutting upon a street in a municipality, hold them subject to the right of the public to use the street for street purposes, of which the construction and operation of a street railroad is one, and unless a change of grade is involved in the construction of such a railroad, or some unnecessary interference with the abutter’s easement in a street' is caused by its construction, he has no right to complain when the council, which has the care, supervision and control of the streets, exercises the power which the Legislature has conferred upon it, to authorize such improved method of travel upon the highway. If, as a matter of fact, by reason of the peculiar business of the abutter, his trade is impaired, or the abutting property is not so desirable by reason of the added noise or in some other particular, this is damnum, absque injuria.
No proof was received as to alleged injuries to the paintiffs’ lot for the reasons above stated, and the court is of the opinion that there is no equity in plaintiffs’ claim in this behalf.
Coming now to consider the real point involved in this motion, it may be premised that the plaintiffs predicate their right to the relief demanded upon their proprietary interest in a lot abutting upon Second street, and they do not sue as tax-payers in behalf of the city, seeking to enforce any right that the public may have by reason of a violation of’ the law or an ordinance by the defendants. While undoubtedly the owner of land abutting on a street or part of a street along which it is proposed to construct a street railroad has the right to complain and enjoin constructon if the owners of a majority of the foot frontage on that street or part of street have not consented in the mode prescribed by statute, yet if they have so consented, then the personal privilege of the abutter to object is gone. Thereafter— if the requisite number of consents have been obtained and a ■ granting ordinance passed — if the grantee fail to conform to the stipulations of the grant as to the route, the public and not an abutting property owner is the real party in interest (Gin. *321 St. R. R. Co. v. Smith et al, 29 O. S., 291). As the owners of a majority of the frontage on each separate street or part of street along which it is proposed to build a street railroad must have consented in writing to the construction thereon of the road (Cable Railway v. Near, 54 O. S., 153), any abutter thereon may raise the question as to the want of such majority, and if he establish a lack thereof, is entitled — if he have not himself consented — to have the construction enjoined. But this is the extent of his right as an abutter (San Fleet v. Toledo, 10 C. C., 460-475; Raynolds v. Cleveland, 2 C. C.—N. S., 139-153).
It is quite true that a departure from the route may work a fraud upon an abutter who has consented to the construction of a railroad upon an established route, and it has been held (Near v. Mt. Auburn Cable Railway Co., Hanna v. the same, 29 Bulletin, 171; also People v. Smith, 45 N. Y., 772-785) that ( a consent as to one route is not a consent for another and different one, going in a different direction. The extent of the proposed route in a municipality may have been a moving consideration in inducing an abutter to consent, but it is equally true that it may not have been a moving consideration. In the case reported in the Bulletin, supra, the street railroad in question was a purely municipal street railroad, lying wholly within the city. Looking at the real situation in the case at bar it can very readily be understood how an abutter might and probably would be indifferent to the route within the municipality, for while technically - the defendant’s line inside the village is a municipal street railway, yet practically and as a matter of common knowledge, intention and convenience, it is an interurban railway, intended by its promoters to carry passengers, express matter, etc., from and to Ft. Wayne and Lima and points between, and the departure from the route established by ordinance is not in a different general direction from that of the route prescribed. In circumstances such as these in the case at bar, where the line is established for its principal length through a long street crossing the village and occupies that street, as far as included in the established route, except for one square, the court will not say that, as a matter of law, a departure from the established route by the running over private *322 right of way to avoid sharp curves, which are always dangerous to passengers and expensive to operate, is a fraud per se. Fraud is never presumed, and in the absence of averment and proof of fraud in this particular the court can not reach the conclusion, as a matter of law, that the consents obtained for the railroad on the route described in the ordinance would not have been given had it been known that the traction company did not intend, for its main line at least, to construct a railroad over the entire route. The route as established by the council may yet be built over, because the traction company has not yet completed its road, and the time within which it may do so has not expired. The court can not say that the mere fact that it has as yet only occupied a portion of the route with its track, using private right of way for another portion, is an abandonment of the portions of the route not yet occupied. Until the time within which the traction company has to complete a railroad over said route has expired, the traction company may build a track over the as yet unused streets, and if it shall fail to do so, it will be time enough then to complain of the failure.
It is doubtless true that the statutes contemplate a municipal street railroad as an entirety, and when a street railroad route is established it is reasonable to infer that the abutters upon the line of the proposed road have in mind, when they give their consent, a railroad upon the established route. Unquestionably the length and character of the route may affect the number and the character of bidders and the price which they will offer to carry passengers over such route. So far, however, as any of these considerations are concerned, except the question of consent, they are wholly matters of public and not private concern, and unless, as it has been already said, a departure from an established route or a failure to build over the entire length thereof is alleged and proved to have worked a fraud upon a consenting abutter, such abutter can not complain and neither can one who has not consented, because the consenting abutter may elect to waive his right to object, the right to consent or not being purely a personal one with him. As supporting this proposition, as well as some others involved in this controversy, *323 the ease of Glidden et al v. Cincinnati, 30 Bulletin, 213, is instructive. Among other things it is held in that case that “an abutting owner, as such, can not complain of defects in the grant other than that of the absence of the required consents of abutting owners, and abutting owners of property upon one street are, as a general rule, restricted in their complaint as to the absence of consents to the street upon which their property abuts.” It will be seen from this case, as well as all others cited on the subject and from the statutes themselves governing street railroads in municipalities, that the theory of the law is that the sovereign powei: of the state is the owner of the easement for public travel in every public highway in the state and that it is only as a matter of grace that it permits a person owning land abutting upon such highway to have any voice in determining its use in the improved method of transportation by rail thereon. The Legislature has seen fit to permit the owners of a majority of the frontage on any street in a municipality to determine whether or not they will consent to such improved use, and from the statutes and decisions it seems clear that the abutters on each separate street form a class by themselves. It follows that if the majority of such class have consented to the construction and operation of a street railroad, so far as their property is concerned, they have no right as such abutters to complain of a failure to utilize a grant over other streets on the same route. As was said before, the right to complain is in the public and not in the abutter, except, of course, where there has been fraud in obtaining his consent.
In Joyce on Electric Law, Section 362, it is said:
“If the designation of a route has been obtained the construction of an electric line must be in compliance therewith, and the location of a line in a street, which is not a part of the route designated, will be treated as a trespass against the abutting owner holding the fee to the street” (Canastota Knife Co. v. Newington Tramway Co., 69 Conn., 146; Rickets v. Birmingham Street Railway Co., 85 Ala., 600):
And in Glidden v. Cincinnati, supra, it was held that—
“A tax-payer, as such, can not institute proceedings to have a street railway grant declared void because of the absence ‘of *324 the necessary consents of the abutting property owners. Such an action can only be brought by an abutting owner. ’ ’
It is clear from these cases and those heretofore cited, as well as from that of Raynolds v. Cleveland, supra, that there is a marked distinction between the rights of an abutting owner and those of the public, and that the former, as such, can complain only of a lack of. consents on his particular street, while other questions as to the performance of the conditions of the grant are matters of public concern, and, consequently, can only be taken advantage of by the public. Wright v. Milwaukee Electric Railway & Light Co., 95 Wis., 29, s. c., 60 Am. St. Rep., 74; and Milwaukee Electric Railway & Light Co. v. Milwaukee, 95, Wis., 39, s. c., 60 Am. St. Rep., 81.
This being true, then the fact that the defendant traction company has so far failed to complete its track over the route established by the ordinance, and that it occupies a portion of Second street west of State not included in the established route, affords no basis for the relief of plaintiffs in the present action;
It appears that the traction company has no right whatever in Second street west of State. That portion of Second street is no part of the established route, and the presence of the track of the defendant in that part of Second street, while it may be a nuisance, can not be complained of by the plaintiff in this action. líe has no interest in that situation. It is a matter between the traction company and the owners of lots abutting on that portion of Second street, or between the traction company and the public at large, as represented by the city. Doubtless the council might take some action to enjoin the continuance of the nuisance, or if it' failed to do so, the provisions of Sections 1777-1778 are broad enough to authorize the city solicitor to apply for a mandamus to compel the performance of the duty of the council to keep the streets open and free from nuisance, or, if the city solicitor should fail to bring such action, a tax-payer might do so; but the plaintiffs in this action do not sue as tax-payers, but predicate their right to relief solely upon their proprietary interest as abutters on Second , street.
It follows from the foregoing that that portion of Second *325 street occupied, by the defendant’s track lying west of State street can not be counted when it comes to ascertaining if the defendant traction company had a majority of consents on Second street.
It was agreed during the hearing that the total frontage from State to Douglas was 7085.5 and the total frontage from Douglass to Monroe was 576 feet. The sum of these, to-wit, 7661.5 feet, is the total frontage on Second street on the route authorized as street railroad route No. 1. It seems that the consents obtained by the traction company on State street, along the established route, foot up to 4270 feet. This includes 66 feet for J. C. Jettinghoff, 132 feet for Mrs. Shaffer,-103 feet for Mrs. Flashpoehler, 71 feet signed for by F. X. Linderman, 66 feet for Mrs. Hughes, 88 feet counted by the village council, though no name is given for it, and 264 feet of city property. The statute requiring the consents of the property owners abutting on the street to have been given in writing prior to the time the granting ordinance was passed, if the council shall have acted affirmatively and made a grant, the presumption of law is that they acted after being satisfied that the requisite consents had been given, and the burden of proof is upon the person asserting the contrary. The statute does not require that these consents shall be entered upon the records of the council, so that the record of the consents, not being required by law, is not evidence on that proposition. The fact of consent may have been shown aliunde. As to the 88 feet above referred to, the ownership of which is not shown by the certified copy ■ of the record, and which appears therein after a dash, it ought to be counted as the council counted it for the reason that plaintiffs introduced no evidence to show that the written consent of the owner thereof was not produced to council prior to the grant. For reasons already stated in the presence of counsel for both parties, the court is of the opinion that the city property abutting upon Second street may be counted, as the passage of the ordinance, in view of the facts, implies that the owner of the legal title thereto consented.
The court is of the opinion that Mrs. Shaffer, being the owner of a life estate in the 132 feet, and who consented to the con *326 struction of the road, had the power to consent for that number of feet, notwithstandng the fact that her life estate is coupled with a conditional defeasance. Until the happening of the contingency which defeats her interest she is still the owner of a freehold interest in the lot. The same character of title to the 66 feet counted in the name of Mrs. Hughes authorized the council to con'sider her as properly consenting for that number of feet. The court is inclined to the opinion that she, by reason of the rule in Shelly’s ease, is the owner of the fee, though this point is not here decided because its decision is immaterial in view of the fact that the law seems to be that the owner of the freehold'interest, such as a life estate, has the power to consent Rapp v. Cincinnati et al, 12 Bull., 119). In the case of Mrs. Flashpoehler, it appears from the evidence that her agent, Mr. Lang, signed for 66 feet; that he immediately thereafter communicated that fact to her, and that she consented in writing to the construction of the road in front of all of her premises abutting upon Second street, 132 feet instead of 66, and that she so consented prior to the passage of the granting ordinance which.was not passed until some two or three months after the matter was called to her attention in the manner indicated. On the authority of Simmons v. Toledo, 8 C. C., 535, the 66 feet signed for by J. C. Jettinghoff can not be counted, as it appears from the evidence that the owner of the land, Jettinghoff’s wife, neither at the time he signed, nor subsequently, has actually consented. As to the 66 feet signed for by F. X. Lindermann as agent, it does not appear that he was the owner of the land nor that the owner authorized him to sign, and consequently it can not be counted. These last two items, therefore, aggregating in frontage 132 feet, must be deducted from the total frontage consented to as above indicated, to-wit, 4270 feet, leaving 4138 feet of frontage along the route in Second street, the owners of which have consented. One-half of the total frontage on that street is 3830.75 feet, leaving a majority in favor of the construction of the railway in that street of 301.25 feet.
U. L. Reeve, for plaintiffs.
^Cable & Parmenter, for defendants.
The injunction heretofore allowed is dissolved.