(117 So. 199)

### BIRMINGHAM ELECTRIC CO. v. ALLEN et al. (6 Div. 85.)

Supreme Court of Alabama.  May 24, 1928.

Rehearing Denied May 31, 1928.

1. **Constitutional law** ⬳70(3)—**Courts will not inquire into motives inducing legislative action.**

Courts will not inquire into motives which may have induced legislative action, whether by the Legislature, the state, or by the municipal council.

2. **Municipal corporations** ⬳661(1)—**Towns and villages may control use of streets (Const. 1901, § 220).**

Towns and villages by proper authorities thereof have power, under Const. 1901, § 220, to control use of streets.

3. **Street railroads** ⬳60—**Certificate of Public Service Commission was not necessary condition precedent to abandonment of street car line pursuant to traffic plan (Code 1923, §§ 9184, 9798).**

Under Code 1923, § 9184, providing that nothing contained in section 9798 shall be construed as a limitation or restriction on police jurisdiction or power of municipalities over streets or highways, certificate of Public Service Commission was not a necessary condition precedent to abandonment of street car line pursuant to traffic plan adopted by municipality and acquiesced in by street railroad.

4. **Street railroads** ⬳60—**Bill to enjoin discontinuance of street car line pursuant to ordinance adopting traffic plan held demurrable.**

Bill to enjoin discontinuance of street car line, alleging discontinuance in accordance with ordinance adopting traffic plan, and acquiesced in by street railroad, *held* without equity and demurrable; complainants having no right to require continuance of operation of particular line superior to authority of city in exercise of police power to exercise control over streets.

Appeal from Circuit Court, Jefferson County; William M. Walker, Judge.

Bill for injunction by Hattie E. Allen and another against the Birmingham Electric Company. From a decree overruling a demurrer to the bill, defendant appeals. Reversed and remanded.

The bill alleges, in substance, as follows:

That the defendant is a public utility corporation engaged in the business of operating an electric street railway system along and upon the public streets and avenues of the city of Birmingham as a common carrier of passengers for hire; that defendant, through its predecessors in business, has procured and accepted from the city of Birmingham and the town of Avondale certain valuable franchises authorizing the construction, maintenance, and operation of electric street railway tracks upon certain of the streets and avenues in the city of Birmingham and the town of Avondale; that it has built said lines and operated electric street railway cars thereon, now having a monopoly, all of which is true as to the streets and avenues in the city of Birmingham upon which the defendant operates the street railway line known as the Avenue C line or route; that as the result of having, acquiring, and using such avenues and streets in the city of Birmingham in its said business under its said franchises, the appellant has upon it the duty of reasonably continuing the operation of its said street railway lines, and, for the purposes of this bill of complaint, particularly the duty of continuing in operation the Avenue C line or route, upon which it has operated street railway cars as a common carrier of passengers for more than 20 years.

That the complainants, because of the matters and conditions alleged in the bill of complaint, have acquired a status in connection with the operation of the said Avenue C line, wherein their property rights and conveniences as citizens and residents of the city of Birmingham are affected and will be affected by the discontinuance of service on the Avenue C line by the defendant as the defendant proposes.

That the Avenue C line is substantially a complete railway line, and the defendant and its predecessors have operated said Avenue C line as a common carrier of passengers for hire for more than 20 years, serving the general public of the city of Birmingham, and particularly the general public having property, businesses, residences, and places of work along said line, or in the neighborhood thereof, and in the territory served thereby.

That the territory served by said line since the acquirement of the franchise right to operate has grown considerably in population, houses have been built along the line and in the territory served, property has been acquired by the complainants and others, and people, including the complainants, have, by the existence of such franchise rights and of said street car line and of the operation thereof, been induced, in a material part, to acquire property and to inhabit said territory, all because of the existence of said line, the

service rendered, and the obligation to render service by electric cars operated thereon.

That complainant Allen is the owner of several pieces of real estate occupied by residential houses, all of which are served by the said Avenue C street railway line, one of said residential houses being occupied by her, and three of said houses being occupied by tenants; that if the said Avenue C car line service is discontinued the parties who occupy as her tenants would be required to travel a distance of more than one-half mile in order to reach the Avondale-Woodlawn line of the defendant.

That the complainant Holmes is the owner of certain premises occupied by residential houses, in one of which he resides, the others being rented; that with the discontinuation of the Avenue C car line he, his family, and tenants will be more than one-half mile from the Avondale-Woodlawn route of the defendant, which will be the nearest street railway line to their premises; that many other citizens now served by the line, and their property, will be likewise affected.

That the defendant threatens to, and will, unless restrained, discontinue and abandon the service along the Avenue C street railway line, discontinuing the same entirely as to the complainants and the other patrons thereof, including the tenants of the complainants, which, if allowed to be done, will not only be of great inconvenience to the complainants and their tenants, but also to the public generally, which is served thereby, and will cause irreparable injury and property damage and monetary loss to the complainants.

That the city of Birmingham employed a traffic expert named Harris to come to Birmingham and make a complete and comprehensive investigation of the traffic situation over the streets and highways of the city of Birmingham, who made a complete report to the city of Birmingham thereon, with recommendations to the city commission with respect to traffic changes in the city of Birmingham involving and comprehending the parking of automobiles, the routing of cars, the abandonment of parts of several lines, and the entire abandonment of two distinct lines, namely, the Avenue C line and the Terminal Station line; that the city commission of Birmingham accepted the report and recommendations of the said Harris, and adopted a resolution and carried the same into effect, which said resolution involved all of the other street car lines in the city of Birmingham and authorized the discontinuance of service over the Avenue C line and the Terminal Station line of the defendant; that the city commission followed the recommendation of said Harris in respect to the disallowing of parking of automobiles on certain streets and avenues; that said report was not made in good faith for the benefit of the city and its citizens, but was for the benefit and advantage of the Birmingham Electric Company.

That on the 31st day of May, 1927, defendant and the city of Birmingham filed with the Alabama Public Service Commission an application styled "Application for Approval of Routes of Street Cars and Busses of the Birmingham Electric Company in the City of Birmingham," and stated in the application that in the proposed routes the Avenue C route would be eliminated; that the Alabama Public Service Commission refused to take jurisdiction of the application, and dismissed said application without prejudice; that, therefore, there has been no application filed, nor is there one pending, for the consideration of the matter of whether service on the Avenue C street railway line may be legally abandoned under permission of the Alabama Public Service Commission.

Complainants pray for a temporary writ of injunction restraining and enjoining the defendant from abandoning or discontinuing street railway service, and any part thereof, on the said Avenue C route as set forth in the bill of complaint, and that on a final hearing of the cause the defendant should be perpetually restrained and enjoined from doing and accomplishing the matters and things for which the temporary injunction was prayed.

Bradley, Baldwin, All & White and W. M. Rogers, all of Birmingham, for appellant.

The police power of the city over its streets is neither restricted nor impaired by any powers conferred upon the Public Service Commission. Code 1923, § 9814; Constitution 1901, § 220; Montgomery v. Orpheum Taxi Co., 203 Ala. 103, 82 So. 117; Birmingham Int. Taxi Service Corp. v. McLendon, 210 Ala. 525, 98 So. 578; 1 Elliott on R. R. (4th Ed.) §§ 509, 510; Ala. Tr. Co. v. Selma T. & S. Bank,· 213 Ala. 269, 104 So. 518; Walden v Montgomery, 214 Ala. 409, 108 So. 231. The city may, the utility acquiescing, direct or authorize the discontinuance of operation of street cars over any street or avenue. Acts 1915, p. 296; State ex rel. v. A. C. G. & A. R. Co., 172 Ala. 125, 55 So. 176, Ann. Cas. 1913D, 696; Clements v. Birmingham, 215 Ala. 59, 109 So. 158; Comm v. Stodder, 2 Cush. (Mass.) 562, 48 Am. Dec. 679; Macon Consol. S. R. Co. v. Mayor, etc., 112 Ga. 782, 38 S. E. 60; Grand Trunk v. South Bend, 227 U. S. 554, 33 S. Ct. 303, 57 L. Ed. 633, 44 L. R. A. (N. S.) 405; Birmingham v. L. & N. R. Co., 216 Ala. 178, 112 So. 742; Id., 213 Ala. 92, 104 So. 258. An individual can acquire no vested interest in the continued service of a public utility. Asher v. Hutchinson W. L. & P. Co., 66 Kan. 496, 71 P. 813, 61 L. R. A. 52; B. R. L. & P. Co. v. Smyer, 181 Ala. 121, 61 So. 354, Ann. Cas. 1915C, 863, 47 L. R. A. (N. S.) 597; Wood v. Seattle, 23 Wash. 1, 62 P. 135, 52 L. R. A. 369; Jones v. Dallas R. Co. (Tex. Civ. App.)

224 S. W. 807; Day v. Tacoma R. & P. Co., 80 Wash. 161, 141 P. 347, L. R. A. 1915B, 547; Perry v. N. O. M. & C., 55 Ala. 413, 28 Am. Rep. 740; State ex rel. v. Parsons, S. R. & E. Co., 81 Kan. 430, 105 P. 704, 28 L. R. A. (N. S.) 1082; Reed v. Hibbing, 150 Minn. 130, 184 N. W. 846. Complainants cannot invoke equity jurisdiction unless they will suffer special and irreparable injury. Southern R. Co. v. Ables, 153 Ala. 523, 45 So. 234; Baker v. Selma S. & S. R. Co., 135 Ala. 552, 33 So. 685, 93 Am. St. Rep. 42. 2 Elliott on R. R. § 850. Exclusive jurisdiction to inquire into and determine the matters complained of in the bill has been conferred upon the Alabama Public Service Commission. Code 1923, §§ 9741, 9773, 9778, 9801, 9813; Hodge v. Ala. Water Co., 205 Ala. 472, 88 So. 585; West Rutland v. Rutland R. L. & P. Co., 96 Vt. 413, 121 A. 757; B. R. & E. Co. v. Birmingham Tr. Co., 121 Ala. 475, 25 So. 777.

Altman & Koenig, of Birmingham, for appellees.

The Legislature may make the right of a street railway to discontinue or abandon service on a portion of its tracks subject to control by the Public Service Commission. 25 R. C. L. 1212. No utility may abandon all or any portion of its service unless and until written application is first made to the commission and issuance of certificate by the commission. Code 1923, § 9798. A street railway company, which accepts an ordinance of a city giving it a franchise and constructs its lines, cannot at its mere will and discretion close and abandon operation of its line or any portion thereof. 25 R. C. L. 1211; Wright v. Milwaukee R. & L. Co., 95 Wis. 29, 69 N. W. 791, 36 L. R. A. 47, 60 Am. St. Rep. 74; State ex rel. v. Bridgeton & M. T. Co., 62 N. J. Law, 592, 43 A. 715, 45 L. R. A. 837; State ex rel. v. Spokane S. R. Co., 19 Wash. 518, 53 P. 719, 41 L. R. A. 515, 67 Am. St. Rep. 739; Potwin Place v. Topeka R. Co., 51 Kan. 609, 33 P. 309, 37 Am. St. Rep. 312; Thompson v. Schenectady R. Co., 65 C. C. A. 325, 131 F. 577; In re Loader, 14 Misc. Rep. 208, 35 N. Y. S. 996, 999. An injunction will lie at the suit of private parties to restrain acts in excess and abuse of a franchise resulting in private injury. 12 R. C. L. 200; Madison v. Madison Gas Co., 129 Wis. 249, 108 N. W. 65, 8 L. R. A. (N. S.) 529, 9 Ann. Cas. 819; Louisville Gas. Co. v. Dulaney, 100 Ky. 405, 38 S. W. 703, 36 L. R. A. 125; Louisville v. Louisville Home Tel. Co., 149 Ky. 234, 148 S. W. 13, Ann. Cas. 1914A, 1240.

THOMAS, J. Appellees filed this bill against appellant, a corporation operating a street railway in the city of Birmingham, seeking injunctive relief against the abandonment or discontinuance of its railway service, or any part thereof, on its Avenue C route, as described in the bill, and along

217 ALA.—39

which route appellees owned property and resided. From a decree overruling demurrers to the bill as amended, defendant has prosecuted this appeal.

The bill shows that this street car line has been operated on this particular route for 20 years, and its discontinuance would work inconvenience to the residents thereon, and that the next nearest car line for such service to such residents would be more than one-half mile measured by the route most generally traveled. A general outline of the bill will appear in the report of the case, and the statement here confined to those features thereof deemed here of controlling importance.

The defendant is operating the street railway in Birmingham under franchise granted by the city. The bill discloses that a traffic expert was employed to come to Birmingham and make a survey of the street railway and traffic situation in the city; that investigation and survey was made by said expert, who in due time submitted his report to the city commission of Birmingham, which report with respect to traffic changes in the city involved the parking of automobiles, routing of cars, abandonment of parts of several lines, and the abandonment of the Avenue C line, here involved. This report was accepted by the city commission and "put into effect in its absolute completeness," authorizing the carrying of the same into effect by resolution duly passed. This resolution, it appears from the bill, comprehended the routing of all the street cars of defendant, and a regulation of traffic in the city generally, including the parking of automobiles. While the bill contains averments impugning the motives of the members of the city commission, there is no charge of fraud or any allegation tending to vitiate or lessen the legal effect of the action of the commission in passing the resolution.

[1] "It is firmly settled in this state that the courts will not inquire into the motives which may have induced authorized legislative action, whether by the Legislature of the state or by the municipal council" (Clements v. Commission of Birmingham, 215 Ala. 59, 109 So. 158); no fraud or corruption being charged as we have indicated above. The matters, therefore, of which these complainants here complain, were duly authorized by the city commission of Birmingham, acting for and on behalf of the public, and in the exercise of legislative discretion, and under the investure of the police power of the state in that municipality. City of Birmingham v. L. & N. R. Co., 216 Ala. 178, 181, 187, 112 So. 742.

The authorities relied upon by complainants (among them State of New Jersey ex rel. City of Bridgeton v. Bridgeton, etc., Traction Co., 62 N. J. Law, 592, 43 A. 715, 45 L. R. A. 837; Wright v. Milwaukee Elec. Ry. Co., 95 Wis. 29, 69 N. W. 791, 36 L. R. A. 47, 60 Am.

St. Rep. 74; City of Potwin Place v. Topeka Ry. Co., 51 Kan. 609, 33 P. 309, 37 Am. St. Rep. 312; State v. Spokane St. Ry. Co., 19 Wash. 518, 53 P. 719, 41 L. R. A. 515, 67 Am. St. Rep. 739) involved the question of the power of the courts to compel a public utility to perform service to the public in accordance with the provisions of the ordinance of the city granting the right to operate, which service, it was held, could not be abandoned at the mere will and discretion of such public utility.

An entirely different question is here presented, where the public utility acquiesces in the comprehensive scheme of the city commission by resolution duly passed, for the regulation of traffic in the city, involving the abandonment of some of the street car lines therein.

[2] The question of the power and control of the streets of cities, towns, and villages by the proper authorities thereof, with particular reference to section 220 of our Constitution, has been the subject of discussion in previous decisions of this court; one of the later cases being that of Birmingham, etc., Taxicab Service Corp. v. McLendon, 210 Ala. 525, 98 So. 578, wherein the court said:

"Const. Ala. 1901, § 220, reads: 'No person, firm, association or corporation shall be authorized or permitted to use the streets, avenues, alleys or public places of any city, town, or village for the construction or operation of any public utility or private enterprise, without first obtaining the consent of the proper authorities of such city, town or village.'

"This section was construed in City of Montgomery v. Orpheum Taxi Co., 203 Ala. 103, 82 So. 117.

"We there held that its terms, 'contemplated the permanent preservation of the municipal right to control, by withholding consent, the use of the streets * * * for the operation of any public utility or private enterprise,' mean 'to preserve against legislative action a measure of local self-government,' 'to restrict the power of the Legislature to the extent that it could not enact laws affecting or governing the use of local public ways that did not recognize or respect the thus permanently preserved rights of the local authorities to determine, according to their judgment, whether or not such ways and places mentioned in section 220 should be used for the purposes prescribed in section 220.' It was further declared: 'The thing over which the municipality may exercise the control contemplated is the use of the public ways and places therein.' * * *

"The clear language of section 220 of the Constitution admits of no other construction than that given in the cases above reviewed. 'No' one shall be authorized or 'permitted to use the streets' for the purposes named 'without first obtaining the consent' of the 'proper authorities' of the 'city.'

"The framers of section 220, above, must have foreseen the increasingly acute situation on the streets of our cities. The control of the streets in conserving the public safety and convenience was deemed an essential sovereign power in the local authorities, who alone can keep an eye on conditions, and meet the needs as they arise.

"It may be noted that section 220, and a new section, 221, protecting municipalities in the matter of privilege taxes, were made the first sections of the article on municipal corporations. They are in the nature of a bill of rights. They recognize certain fixed, constitutional rights which shall not be invaded."

Whatever vested interest the defendant may have under its franchise from the city is not here presented or considered, as defendant does not complain, but acquiesces in the action of the city as in the exercise of its police power. Grand Trunk, etc., Ry. Co. v. City of South Bend, 227 U. S. 544, 33 S. Ct. 303, 57 L. Ed. 633, 44 L. R. A. (N. S.) 405. One of the earlier cases discussing such police power of the cities over the use of the streets is that from the Supreme Court of Massachusetts (Commonwealth v. Stodder, 2 Cush. 562, 48 Am. Dec. 679), which is of interest in this connection. But we need pursue that inquiry no further than Birmingham, etc., Taxicab Corp. v. McLendon, supra, as firmly establishing such power under express constitutional guaranty. Whatever inconvenience complainants may suffer, we think it clear they have no right to the continued operation of this particular line which could rise superior to the authority of the city in the exercise of its police power under our Constitution, and the decisions construing the same. Asher v. Hutchinson Water Co., 66 Kan. 496, 71 P. 813, 61 L. R. A. 52; Wood v. City of Seattle, 23 Wash. 1, 62 P. 135, 52 L. R. A. 369; Day v. Tacoma Ry. Co., 80 Wash. 161, 141 P. 347, L. R. A. 1915B, 547; Perry v. N. O., M. & C. R. Co., 55 Ala. 413, 28 Am. Rep. 740.

[3] It is argued by complainants that, under the provisions of section 9798 of the Code of 1923, a certificate of the Public Service Commission was a necessary condition precedent to the abandonment of Avenue C line, and that the bill shows no such certificate was obtained; but, on the contrary, the Public Service Commission refused to take jurisdiction of the petition filed to that end and dismissed the same without prejudice. The subsequent section 9814 of the Code expressly provides that nothing contained in such article of the Code shall be construed as a limitation or restriction upon the police jurisdiction or power of municipalities over their streets or highways, or the power of such municipalities "to adopt and enforce reasonable police regulations and ordinances in the interest of the public safety, morals and convenience." Properly construed, as previously stated, the city authorities acted in the exercise of their police power in the general regulation of traffic in the city, and, an exercise of legislative discretion, over which the Public Service Commission has no control. The fact that as a result the Avenue C line is discontinued is but an incident to the comprehensive scheme

of traffic regulation, and does not serve to bring this case within the influence of section 9798 of the Code. Like observations are applicable to the provisions of section 9742 of the Code.

[4] The court therefore concludes that the bill is without equity, and the demurrer thereto should have been sustained.

Let the decree be reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and SAYRE, GARDNER, and BOULDIN, JJ., concur.