168 So.2d 5

**COVINGTON ELECTRIC COOPERATIVE**

v.

**ALABAMA POWER COMPANY et al.**

**4 Div. 140.**

Supreme Court of Alabama.

Oct. 8, 1964.

Ralph A. Clark, Andalusia, A. A. Smith, Hartford, Jas. W. Kelly, Geneva, J. M. Williams, Jr., and Rushton, Stakely & Johnston, Montgomery, for appellant.

Martin, Vogtle, Balch & Bingham, Birmingham, Steiner, Crum & Baker, Montgomery, Jas. A. Mulkey, Geneva, Stokes & Woods, Ozark, Albrittons & Rankin, Andalusia, for appellee.

· Chas. R. Paul and E. C. Boswell, Geneva, for City of Samson and other intervenors.

COLEMAN, Justice.

· Complainant appeals from decree dissolving temporary injunction whereby respondent had been enjoined from proceeding with any construction of electric lines and facilities in the City of Samson.

Complainant is Covington Electric Cooperative, Inc., hereinafter sometimes called Covington, a corporation organized under § 31 et seq., Title 18, Code 1940. Covington is not a utility subject to regulation by the Alabama Public Service Commission.

Respondent is Alabama Power Company, a corporation, a public utility in the business of generating, transmitting, and distributing electricity. The Power Company is subject to regulation by the Alabama Public Service Commission.

The temporary injunction was granted on the ex parte application of Covington. The Power Company filed motion to dissolve.

The City of Samson and certain individual persons, who are residents of the city, were permitted to intervene.

After notice and hearing on the motion to dissolve, the court rendered decree dissolving the temporary injunction. From that decree Covington appeals and asserts that the court erred in dissolving the injunction and in permitting intervenors to intervene.

In its bill of complaint, Covington alleges that it now furnishes electricity to 760 residents of Samson under a franchise granted by the City of Samson; that the Power Company has never furnished electricity to any resident of Samson; that the Power Company has procured from the city a franchise allowing the Power Company to use the streets of the city to serve the citizens of Samson with electric energy i competition with Covington; that the Power Company is about to construct its lines and facilities into and in the city; that such construction is unnecessary duplication of Covington's existing facilities; that the Power Company is subject to § 332, Title 48, Code 1940, which recites in pertinent part:

"No . . . . facility for the . . . . furnishing of . . . . electricity . . . . shall be constructed except ordinary extensions of existing systems in the usual course of business . . . . until written application is first made to the commission for the issuance of a certificate of convenience and necessity, and the issuance by the commission of such certificate. . . . .";

that the Power Company does not have a certificate from the commission authorizing the Power Company to construct facilities in the City of Samson and that the construction now contemplated by the Power Company is not an ordinary extension of an ex-

isting system in the usual course of business, ". . . . and will be an invasion of a territory now being adequately served with its electric requirements by" Covington; that the construction contemplated by the Power Company will bring about a dangerous and unsafe condition due to the close proximity of its lines and the lines of Covington; and that the duplication of Covington's facilities will cause Covington to lose "part of its income from these facilities which now amounts to over $100,000 annually."

The prayer of the bill is for temporary and permanent injunctions and for general relief.

As we understand Covington's argument, it recognizes that it has no exclusive franchise. Covington states in brief:

". . . . If Samson was constructing the duplicating lines and facilities Appellant would have no legal recourse, for a city has paramount authority within its municipal boundaries to build a competing electric system. Alabama Power Co. v. Guntersville, 235 Ala. 136, 177 So. 332 [114 A.L.R. 181]. But the situation here is different. We have here a public utility proposing to construct duplicating lines and facilities into a small city without obtaining a certificate of convenience and necessity to do so. This electric utility is under the jurisdiction of the Public Service Commission, it is a regulated utility, and as such is subject to the regulatory statutes governing such utilities. It cannot boast of regulated rates and deny the application of other forms of regulation contained in the statutes. As shown heretofore, Appellant is a competing utility and has the right to require enforcement of the statutes."

The Power Company says that § 332, Title 48, does not require it to obtain a certificate for construction on streets within corporate limits of municipality where Power Company has a franchise from the municipality, and that this is true because of certain constitutional and statutory provisions.

Section 22, Constitution of 1901, provides:

"That no ex post facto law, nor any law . . . . making any irrevocable or exclusive grants of special privileges or immunities, shall be passed by the legislature; . . . ."

 The argument is that the legislature is prohibited by the organic law from making an irrevocable or exclusive grant, and, therefore, such grant cannot be made by a municipality which is merely an agency of the state exercising only derivative powers. The power of the agent cannot exceed that of the principal. Birmingham & Pratt Mines St. Ry. Co. v. Birmingham St. Ry. Co., 79 Ala. 465, 473. The city, under constitutional limitations, is denied the right to grant to any person or corporation any exclusive franchise. Alabama Power Company v. City of Guntersville, 235 Ala. 136, 140, 177 So. 332, 114 A.L.R. 181. See Alabama Power Company v. Ickes, 302 U.S. 464, 58 S.Ct. 300, 82 L.Ed. 374. If the Power Company is lawfully constructing its facilities in Samson, then Covington has no right to enjoin such construction.

The issue comes thus to the single question: Does § 332, Title 48, make the construction of the Power Company's facilities on the streets of Samson unlawful when the Power Company has not obtained a certificate from the commission, but has obtained a franchise to do so from the city? We do not understand Covington to assert that the construction is unlawful, for any other reason.

§ 20, Title 48, Code 1940, recites:

"Nothing in this title is intended or shall be construed: To limit or restrict the police jurisdiction or power of municipalities over their streets and other highways and public places or the power to maintain or the power to require maintenance of the same; to limit or restrict any right or power,

by contract or otherwise, of any municipality to require utilities to pave and maintain the portions of highways used and occupied by them; in respect of matters other than rates and service regulations and equipment, over which exclusive jurisdiction is conferred by this title upon the commission to affect existing rights and powers or rights and powers hereafter acquired by municipalities under valid contracts with utilities; in respect of matters other than rates and service regulations and equipment, to repeal any power of any municipality to adopt and enforce reasonable police regulations and ordinances in the interest of the public safety, morals and convenience, or to protect the public against fraud, imposition or oppression by utilities within their respective jurisdiction, or to require the discharge by utilities of their respective duties within such municipalities, whether arising out of contract with the municipality or by statute or regulation by the commission or otherwise."

Section 220, Constitution of 1901, recites:

"No person, firm, association, or corporation shall be authorized or permitted to use the streets, avenues, alleys, or public places of any city, town, or village for the construction or operation of any public utility or private enterprise, without first obtaining the consent of the proper authorities of such city, town, or village."

In Birmingham Electric Company v. Allen, 217 Ala. 607, 117 So. 199, this court considered a bill to enjoin a street railway company from abandoning a part of its service in the City of Birmingham. The city had authorized the proposed abandonment of service, but the railway company had not obtained from the commission a certificate allowing the abandonment. § 9798, Code 1923 (§ 35, Title 48, Code 1940), requires that no utility shall abandon any portion of its service until written applica-

tion is first made to the commission for certificate that the public convenience or necessity permits such abandonment, and the issuance of such a certificate. It was argued that under § 9798, Code 1923, a certificate was a necessary condition precedent to the abandonment. This court said:

". . . . The subsequent section 9814 of the Code (§ 20, Title 48, Code 1940) expressly provides that nothing contained in such article of the Code shall be construed as a limitation or restriction upon the police jurisdiction or power of municipalities over their streets or highways, or the power of such municipalities 'to adopt and enforce reasonable police regulations and ordinances in the interest of the public safety, morals and convenience.' Properly construed, as previously stated, the city authorities acted in the exercise of their police power in the general regulation of traffic in the city, and, an exercise of legislative discretion, over which the Public Service Commission has no control. * * *" (Par. Added.) [217 Ala. at page 610, 117 So. at page 202]

This court, with reference to Section 220, Constitution of 1901, said further:

" 'This section was construed in City of Montgomery v. Orpheum Taxi Co., 203 Ala. 103, 82 So. 117.

" 'We there held that its terms, "contemplated the permanent preservation of the municipal right to control, by withholding consent, the use of the streets * * * for the operation of any public utility or private enterprise," mean "to preserve against legislative action a measure of local self-government," "to restrict the power of the Legislature to the extent that it could not enact laws affecting or governing the use of local public ways that did not recognize or respect the thus permanently preserved rights of the local authorities to determine, ac-

cording to their judgment, whether or not such ways and places mentioned in section 220 should be used for the purposes prescribed in section 220." It was further declared: "The thing over which the municipality may exercise the control contemplated is the use of the public ways and places therein." * * *

" 'The clear language of section 220 of the Constitution admits of no other construction than that given in the cases above reviewed. "No" one shall be authorized or "permitted to use the streets" for the purposes named "without first obtaining the consent" of the "proper authorities" of the "city."

" 'The framers of section 220, above, must have foreseen the increasingly acute situation on the streets of our cities. The control of the streets in conserving the public safety and convenience was deemed an essential sovereign power in the local authorities, who alone can keep an eye on conditions, and meet the needs as they arise.

" '. . . . . . . . . . . . . . . . . .' " [217 Ala. at page 610, 117 So. at page 202]

In the Allen case, the question was whether a certificate was required to authorize a utility to abandon service on city streets. This court held that a proper construction of what is now § 35, Title 48, in the light of what is now § 20, Title 48, and Section 220 of the Constitution, rendered a certificate unnecessary when the city had authorized the abandonment. The reason for the holding seems to be that Section 220 preserved the right of local authorities to control the use of the public ways and places mentioned therein.

In the instant case, the question is whether a certificate is required to authorize a utility to commence construction of electric lines and facilities on city streets. We are of opinion that the same reason which applied in Allen also applies here. If a utility, which has obtained a franchise from the city, is to be compelled to obtain also a certificate or permission from the Public Service Commission, then the city will be denied control of its ways and the places mentioned in Section 220 of the Constitution.

■ Accordingly, we hold that § 332, Title 48, construed in the light of § 20, Title 48, and Section 220 of the Constitution, did not make unlawful the construction by the Power Company of its facilities on the ways and places in Samson, as authorized by the governing body of that city. Since the construction was not shown to be unlawful, Covington was not entitled to enjoin it, and the court did not err in dissolving the temporary injunction.

We have considered all the authorities cited by Covington in support of the proposition that no utility, subject to the jurisdiction of the commission, is authorized to construct facilities in a municipality without first obtaining the certificate required by § 332, Title 48. Only three of the authorities cited are from this state. Of these three, two are not concerned with service in municipalities. The one which is so concerned is Clarke-Washington Electric Membership Corp. v. Alabama Power Company, 272 Ala. 598, 133 So.2d 488, where this court held that the Power Company was not required to obtain a certificate in order to operate lawfully in an area newly annexed to a city, when the Power Company was already operating lawfully in the city prior to the annexation. We do not think that holding contrary to our holding in the instant case.

■ Turning now to the second error argued by Covington; that is, that the court erred in allowing intervention; we note that this appeal is from a decree granting a motion to dissolve a temporary injunction. Such a decree is interlocutory. Appeals are of statutory origin and, unless so provided for, no appeal will lie. State v. Seminole Bottling Company, 235 Ala. 217, 178 So. 237.

'Appeal from interlocutory order dissolving injunction is authorized by § 757, Title 7, Code 1940.

 The decree allowing intervention is also an interlocutory decree. We are not advised of any statute which authorizes appeal from a decree allowing intervention. If no provision is made by law for appeal from an interlocutory decree, such decree may not be assigned as error on appeal from another interlocutory decree. Fogleman v. National Surety Company, 222 Ala. 265, 132 So. 317; Gordon v. Central Park Little Boys League, 270 Ala. 311, 119 So. 2d 23. We cannot, therefore, on this appeal, consider the assignments which assert error in allowing intervention.

Affirmed.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.